LOUDOUN v. EIGHTH AVE. R. CO. et al.

(Supreme Court, Appellate Division, First Department.   April 9, 1897.)

1. PERSONAL INJURIES—MEDICAL EXAMINATION—CONDITION BEFORE ACCIDENT.
    Plaintiff's physician may testify as to her condition from six months to
    two years before the accident, to form a basis for a comparison between
    her then condition and her condition after the accident.

2. SAME—PROBABLE RESULT—DISABILITY.
    Testimony of plaintiff's physician that while her disability may possibly
    improve to some extent, which is uncertain, he believes it to be perma-
    nent, is too uncertain and indefinite to be competent.

3. TRIAL—CRITICISING WITNESS.
    It is proper for counsel, in his argument, to reflect on the character of a
    medical witness, where it appears that such witness had been in the habit
    of disclosing communications made to him in his professional capacity.
        Williams, J., dissenting.

Appeal from trial term, New York county.

Action by Imogene Maud Loudoun against the Eighth Avenue Rail-
road Company and the Third Avenue Railroad Company for per-
sonal injuries.   From a judgment entered on a verdict in favor of
plaintiff, and from an order denying a motion for a new trial, de-
fendants appeal.   Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS,
PATTERSON, and PARKER, JJ.

J. M. Scribner, for appellant Eighth Ave. R. Co.
Henry L. Scheuerman, for appellant Third Ave. R. Co.
C. N. Bovee, Jr., for respondent.

VAN BRUNT, P. J.   The plaintiff sued to recover damages
which she sustained from a collision between a car of the Third Ave-
nue Railroad Company and a car of the Eighth Avenue Railroad
Company, on which latter she was a passenger.   The evidence
showed that the plaintiff entered an Eighth Avenue open summer
horse car at Eighty-Sixth street, intending to ride to One Hundred and
Thirty-First street.   The seats of the car ran transversely, and at the
time of the collision the plaintiff was sitting at the extreme west-
erly end of the rear seat of the car, her husband sitting next to her
towards the east.   As the Eighth Avenue car was crossing One Hun-
dred and Twenty-Fifth street, a cable car of the Third Avenue Com-
pany was coming along that street from the west, and struck the
horse car on which the plaintiff was riding, and threw it off the track,
against a column of the elevated railroad.   The position of the plain-
tiff was such that the cable car struck against her back, injuring it,
as she claimed, and causing certain bruises and contusions in other
parts of her body.   Considerable evidence was given in reference to
the extent of the injuries which the plaintiff had sustained, and, the
case being submitted to the jury, they found a verdict for the plaintiff.
A motion was made by each of the defendants for a new trial upon
the minutes, which was denied; and from the judgment thereupon en-
tered, and from the orders denying such motions for new trial, these
appeals are taken.

It is claimed by each of the appellants that the court erred in refusing to dismiss the complaint upon the ground that there was no proof tending to show that either of them was guilty of negligence.    The plaintiff was a passenger upon the car of the Eighth Avenue Railroad Company, and that company owed to her the duty of using care to prevent injury being inflicted upon her while such passenger; and, the evidence showing that both the colliding vehicles were such as were used upon the public streets, the happening of the accident imposed upon the defendant the Eighth Avenue Railroad Company the duty of showing that it had used care in the management of its vehicle.    While it may be true that the rule referred to in the case of Breen v. Railroad Co., 109 N. Y. 297, 16 N. E. 60, depends upon the fact that the thing causing the injury was under the control of the party sought to be held responsible, yet the converse of the proposition is not always necessarily applicable.    A carrier has no right to imperil the lives and safety of passengers by insisting upon his legal rights.    His primary duty is the care for the safety of his passengers, and not the assertion of his full legal privileges.    The Eighth Avenue Railroad Company was bound, even by a yielding of the right of way which it seems to have possessed, to have avoided this collision if it were possible; and there is no evidence but that with the use of care the plaintiff might have been preserved from injury while riding upon the car in question.

The negligence of the Third Avenue Railroad Company seems to be even more apparent.    These cars were street vehicles, and their movements were regulated by the ordinary rules governing the passage of vehicles across streets and avenues.    The Eighth Avenue car apparently had the right of way, because it was struck at the very rear end of the car, showing that it had almost got across the track of the Third Avenue Railroad before the collision took place.    In the absence of any evidence, the necessary conclusion to be drawn from this state of facts was that the Third Avenue Railroad Company was in fault. · Its car should have been stopped in order to allow the Eighth Avenue car to complete the crossing of its tracks in safety.

There are certain exceptions to the admission of evidence, and to the rulings of the court in regard to the privileges of counsel, which it is necessary to notice.    It is claimed that it was error to allow Dr. Phelps to testify as to the physical condition of the plaintiff prior to the happening of the accident, because the knowledge which he had in regard to her previous condition was of a period too remote for the testimony to be competent.    It appears that some three or four years before the doctor had treated the plaintiff.    It also appears that subsequent to that time he had seen her.    He was unable to state from memory whether it was six months or two years before; but he testified as to her physical condition then, and as to her condition at the time he made the examination, shortly before the trial.    We think that this evidence was entirely competent.    He was testifying as to knowledge which he had obtained in regard to her condition within a period of from six months to two years prior to the happening of the accident; and it was not so re-

mote but that it formed some basis for a comparison between her then condition and that which she exhibited at the time of the examination before the trial.

It is also claimed that the court erred in its rulings in regard to the evidence of Dr. Phelps in reference to the permanency of the injuries which the plaintiff had sustained. Dr. Phelps was asked: "In your opinion, what will be the result of those injuries from which you find Mrs. Loudoun suffering in the natural and ordinary course of events?" His answer was: "I think that while her disability may possibly improve to some extent, which is uncertain, I believe the disability which she has is permanent." The question was objected to, and a motion was made to strike out the answer as not proper testimony of permanent injury, as too uncertain and indefinite. The motion was denied, and an exception taken. It is claimed that the question should have called for what with reasonable certainty would be the result of the injury in the natural and ordinary course of events. We do not see the force of this objection to the form of the question. That which happens in the natural and ordinary course of events may, it seems to us, be assumed to happen with reasonable certainty. A natural result is one which may always with reasonable certainty be expected.

On cross-examination Dr. Phelps was asked: "You base your answer to the question respecting the probable result of this injury upon what you had learned from the patient, from the history of the case as it has been told you?" He answered: "Partially, and from my observation." In view of this question and answer, it is claimed that it was error not to grant the motion which was made at the end of all the testimony to strike out the testimony of Dr. Phelps as to permanency of injury, on the ground that the evidence was incompetent, and there was no sufficient basis of fact in evidence before the jury, for the opinions expressed were not fully in evidence. This motion in no way called the attention of the court to any objection based upon the answer of Dr. Phelps upon cross-examination above mentioned. It was a general motion, made after the case had been entirely closed. It was not connected with the introduction of any evidence, and in no way called the attention of the court to any facts or features which might have been easily supplied had mention been made of the specific defect.

Various objections have been raised as to the court permitting the counsel to reflect upon the character of one of the medical witnesses for the defense, and because the counsel was allowed to read the sections of the Code prohibiting the disclosure of communications made to an attorney or physician in his professional capacity. Upon an examination of this record, it would appear that there had been a disclosure by the physician criticised of facts which he had obtained as the physician of the plaintiff. This was done regularly and systematically, was a flagrant violation of the duty which he owed to his patient, and a contempt of the law which prohibits such disclosures. Under these circumstances, the counsel was justified in calling the attention of the jury to the fact of this violation of law, of this failure of appreciation of the duties of a professional

man to his patient, and of the flagrant abuse of the position which
he occupied.   It cannot be said that any too severe language was
used in criticising the conduct of a physician who would thus betray
his patient.   Counsel have a right to criticise the conduct of wit-
nesses.   If it is the subject of animadversion, they have a right to
bring the attention of the jury to it, and it is not error in the court
to permit counsel to exercise this right.   That was all that was done
in the case at bar.   This physician had been guilty of the grossest
violation of his duty, as already stated, and was open to the severest
criticism and condemnation.

There are other exceptions in the case, but they do not seem to
be of sufficient gravity to need special discussion; and, upon a con-
sideration of the whole case, we think that the judgment and orders
appealed from should be affirmed, with costs.

RUMSEY, PATTERSON, and PARKER, JJ., concur.   WIL-
LIAMS, J., dissents.