(13 App. Div. 167.)

HURLEY v. NEW YORK & BROOKLYN BREWING CO. et al.

(Supreme Court, Appellate Division, Second Department.   January 19, 1897.)

1. NEGLIGENCE—PERSONAL INJURY—SUFFICIENCY OF EVIDENCE.
    A finding of negligence against the owner of a wagon which collided with a street car is warranted by evidence that the wagon weighed nearly two tons, was over 13 feet long, carried a 10½-foot pole, was loaded with 4½ tons of beer in casks, and was driven rapidly down grade from an inclosed yard out on a street, without first ascertaining if the way was clear, the driver knowing that horse cars passed along the street in front of, and 32 feet from, the gateway.

2. SAME—PROXIMATE CAUSE—DEATH.
    It is for the jury to say whether an injury was the cause of death 10 months afterwards, where the medical testimony of plaintiff was that the conditions following the injury and each other, including consumption and death, were the continuously operating effect of the injury, and the medical witnesses' for defendant testified to the contrary.

8. NEGLIGENCE—BRAKES FOR WAGONS—QUESTION FOR JURY.
    Negligence was a question for the jury where defendant failed to furnish a brake for his beer truck, in consequence of which it collided with a street car while going down an inclined street from the brewery, and injured a passenger, and there was evidence that brakes were in use on some trucks of that character.

4. STREET RAILROADS—COLLISION WITH WAGON—INJURY TO PASSENGER.
    It is a question for the jury whether the driver of defendant's horse car was negligent, where he drove rapidly on a descending grade, and the driver could have seen, 60 or 70 feet away, horses on a trot, drawing a loaded beer wagon, heading towards the track, to cross it at right angles, and the rapid movement of the car was not checked until the collision took place.

**5. APPEAL—JOINT WRONGDOERS—JUDGMENT AGAINST ONE.**
 The recovery of a judgment against one of two joint wrongdoers joined in the same action is not, until paid or satisfied, a bar to the prosecution of an appeal to review the trial as to the other.

Appeal from trial term, Kings county.

Action by Cornelius Hurley, as administrator of Anna E. Hurley, deceased, against the New York & Brooklyn Brewing Company and the Brooklyn Heights Railroad Company, for injuries to plaintiff's intestate caused by a collision between a beer wagon of the brewing company and a horse car of the railroad company. There was a judgment for plaintiff against the New York & Brooklyn Brewing Company, and a dismissal of the complaint as to the other defendant. From the judgment, and from an order denying a motion for a new trial, the New York & Brooklyn Brewing Company appeals. Plaintiff appeals from the order dismissing the complaint. Affirmed as to the defendant brewing company. Reversed as to the defendant railroad company.

Argued before CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Thomas F. Magner, for plaintiff.
Herbert C. Smyth, for appellant.
Thomas S. Moore, for respondent.

BRADLEY, J. On the 19th day of December, 1893, the plaintiff's intestate received an injury resulting from the collision of the pole of the wagon of the defendant brewing company with the street car of the defendant railroad company in which she was a passenger. She died October 22, 1894. The charge made by the complaint is that her injury and death were caused by the negligence of both defendants. The complaint, as against the defendant railroad company, was dismissed at the trial, and judgment entered accordingly, with costs. Upon a verdict against the other defendant, for $3,000, judgment was also entered.

The first inquiry is whether or not the alleged negligence of the defendant brewing company was established by the evidence. The car, drawn by horses, and crowded with school children, on their way to school, was going south along Lorimer street, in the city of Brooklyn. The plaintiff's intestate, then 16 years of age, was seated on the easterly or left side of the car. The defendant's brewery premises were on the east side of Lorimer street, and south side of Scholes street. From the south side of the latter street there is a wall in front of those premises, extending along Lorimer street 57 feet, to an opening in it for a passageway into and from the defendant's brewery premises. From this wall, at the gateway, to the north-bound track of the railroad, the distance was 24 feet and 5½ inches, and 32 feet 1½ inches to the south-bound track, upon which the car was moving. As the car was at Scholes street, the driver of the defendant's beer wagon was proceeding to come out of this gateway; and, when the car was about opposite that place, the pole of the wagon came in collision with the car, pierced the side of it, and struck and injured Miss Hurley. The wagon was a

heavy one, weighing nearly 2 tons, loaded with $4\frac{1}{2}$ tons of beer, in casks. There was a descent in the grade from the gateway into Lorimer street. Although there is some conflict in the evidence as to the manner in which the horses were driven into the street, the conclusion was permitted that they were driven at a rapid gait. This may be deemed an important fact bearing upon the question of negligence. The evidence on the part of the defendant is that while going into the street on this occasion, and before the collision, the ring of the pole chain attached to the harness of the off-side horse broke, thus reducing the means of controlling the movement of the wagon to the remaining pole chain connected with the harness of the other horse, and that this was insufficient to enable the driver to avoid the contact. If the charge of negligence of the defendant was dependent solely upon the fact that this ring of the pole chain gave way, there would be no reasonable support for such charge, as it does not appear that the defendant was chargeable with knowledge that the ring was defective, if it was so. There is some evidence tending to prove, although not very satisfactory, that the pole chain ring did not break until the pole of the wagon struck or penetrated the car. It appears that the length of the wagon ("truck," as it is called) was over 13 feet, and that of the pole 10 feet and 6 inches, making both over $23\frac{1}{2}$ feet in length. It may be observed that the outside of the gutter in Lorimer street is about 15 feet from the defendant's wall, which, evidently, is the reason for the statement of the driver that in going from the gateway, and turning this truck into Lorimer street, the horses would have to go to the south-bound track of this railroad. Without first seeing or knowing that the way was clear to do so, it would seem to have been an act of negligence on the part of the defendant to drive this truck, loaded as it was, with the speed before mentioned, down into the street, where cars carrying passengers were liable to be passing on the railroad. While none can be denied the use of a street for the purpose of traveling upon it, the duty of all is reciprocal to exercise such care as not unnecessarily to inflict injury upon, or curtail the rights of, those who seek to use it for such purpose. The conclusion was warranted by the evidence that the defendant's driver failed to exercise the care required of him, and that the injury sustained by the plaintiff's intestate was the consequence of such negligence on his part. There can be no imputation of contributory negligence on her part.

The further question arises whether or not the death of the plaintiff's intestate was caused by such negligence of the defendant. Code Civ. Proc. § 1902. In view of the nature of the injury received by her, and of the fact that she continued to live 10 months after the accident, the question is, in some sense, one of medical science, and its determination is largely dependent upon evidence of that character. While the time intervening between that when the injury was received and the death is entitled to consideration, it is not controlling on the subject of inquiry whether the blow received by the girl was the proximate cause of her death. It must be assumed from the evidence that she was in good health up to

that time, and that thereafter she was not so. The apparent effect when she reached home of the blow she received from the truck pole was that her left side was bruised and red from a little below her lower rib to her shoulder blade. This was followed by swelling, afterwards by pleurisy, succeeded by consumption, from which she died. Her medical attendants describe the early effect of the violence upon her, and trace the physical conditions which followed, down to the time of her death, and by their evidence attribute it to the injury received 10 months before. It is not sufficient that the plaintiff's intestate may not have died when she did die if the injury had not been received by her. Nor is it necessary to the proximate cause of the act which produced the injury that different physical conditions followed, resulting in death, if there was an unbroken connection between it and them. In other words, if there was no intervening efficient independent cause to which the death may have been attributed, the effect of death was proximate to the violence as the cause. Pollett v. Long, 56 N. Y. 200; Ehrgott v. Mayor, etc., 96 N. Y. 264; Railway Co. v. Kellogg, 94 U. S. 469. Upon this subject, as applied to the present case, the evidence of the doctors radically differed. The medical witnesses called on the part of the plaintiff testified to the effect that the consumption which resulted in the death of Miss Hurley could have been, and, in their opinion, was, the result of, and produced by, the blow she received; and by this evidence they traced the cause from the violence by a continuous succession of physical conditions, and without any intervening independent cause to her death as the effect of such blow. On the other hand, the medical witnesses on the part of the defendant testified to the contrary, and they gave evidence tending to support their views that the death of the plaintiff's intestate was not caused by the injury she received in the car, and that the consumption which resulted in her death not only was not, but could not have been, caused by such violence and injury. The view derived from a careful examination of their testimony is that the question arising upon the conflicting evidence was fairly one of fact for the jury, and that they were permitted to find that the act of negligence complained of was the proximate cause of the death of the plaintiff's intestate.

Our attention is called to the case of Weber v. Railway Co., 42 N. Y. Supp. 789, recently decided by the appellate division of the First department. There the plaintiff's intestate, Weber, received a severe injury by a blow upon his knee in October, 1894, and died in June, 1895. The action to recover damages was founded upon the charge that his death was caused by that blow. The recovery by the plaintiff was reversed. His death resulted from consumption; and the question upon the review, as there stated, was whether "the facts proved constituted a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury"; and the court, in the opinion, delivered by Mr. Justice Rumsey, added: "It is sufficient if she establishes that the injury set in motion other causes which produced the disease and the death,

but which, in the absence of this injury, would not have produced it." In that case the theory that consumption was caused by the violence was founded upon the existence of tuberculosis in the injured knee. The difficulty, as the court held on review, was that the assumed fact of the tubercular condition of the knee was unproved upon the trial, and that for such reason the connection of the original injury as the cause, with the death as its effect, essential to support the action, did not appear. The evidence upon which the plaintiff sought to show that tubercles were in the knee of her intestate was by opinion founded somewhat upon the presumed fact that pus was there, although it appeared that the existence of pus was insufficient to support the conclusion of the presence of tuberculosis in the knee. That difficulty does not necessarily exist in the present case. Succeeding the injury which was received by Miss Hurley while in her menstrual period, her physical derangement was such that she never had another. The evidence of her attending physician, who had known her for years before, was to the effect that he made examination of her on the day of the accident; that he found a large bruise on her left side, extending from about an inch below the lower rib, clear to the lower angle of the shoulder, and it was puffed up considerably at the lower portion of the dorsal division of the spine; that three days afterwards she began to complain of pains along the ribs on the left side, and he detected that there was fluid in the chest, and the condition pleurisy there; that a few days later he detected adhesions from the left side, due to pleurisy on that side of the chest, on the back of the chest, under the shoulder blades, and under the axilla; that this pleurisy started about two days after the injury; sharp pain accompanied deep breathing; and that there were friction sounds of the covering of the lungs scraping up against the covering of the wall of the chest, which indicated inflamed condition of the pleura, and then followed an exudation of water into the chest; that this condition existed in February; that, from a time shortly after the injury, she had a cough whenever she took a deep breath; that she was losing strength through January, and had a hacking cough developed early in February, and she raised sputum of mucopurulent character; and that consumption was also developed at that time. From those and some further facts descriptive of the condition which the evidence tended to prove, the testimony of the medical witnesses on the part of the plaintiff was to the effect that the conditions accompanying and following each other in the case of Miss Hurley showed that they, including consumption and her death, were the conditions from effects continuously operating of the blow and injury she received about the chest. In this respect the case is distinguishable from that of Weber. The attending physician, who knew the girl and knew the condition of her health prior to the accident, which was good, says that he thought it not possible that she had any tubercular germs for any time before the injury, and that at the time he examined her, on the day it occurred, he found no trouble in the chest outside of the contusion, which contusion he knew was not from disease, but

was from violence. While it may be true that the reduction of
the vitality of a person renders his system more susceptible to tu-
bercular bacilli, and consumption as the consequence, because there
is a want of power to resist it, and although it is on such theory
that the disease of the girl is accounted for by some of the witnesses,
the conclusion was warranted by the evidence of other witnesses
(which it may be assumed the jury adopted) that the final condi-
tion which resulted in her death followed in a continuous course
of afflictions from and as the effect of the violence, and that it was
the original or proximate cause.

The defendant's counsel took some exception to the rulings of
the court in the reception of evidence of physicians, called for by
hypothetical questions. None of those exceptions were well taken.
The answer to the inquiry whether, upon the assumed state of facts,
the blow could produce consumption, was not speculative in such
sense as to render it incompetent. Turner v. City of Newburgh,
109 N. Y. 301, 16 N. E. 344; Griswold v. Railroad Co., 44 Hun, 236;
Id., 115 N. Y. 61, 21 N. E. 726. In those cases, that of Strohm v.
Railroad Co., 99 N. Y. 306, is distinguished, as it related to evidence
offered to prove, by way of opinion, the possible consequences to
follow in the future from an existing condition. Such evidence was
held incompetent in the Strohm Case, and that of Wallace v. Oil
Co., 128 N. Y. 579, 27 N. E. 956, is to the same effect. The hypothet-
ical question above referred to was, however, preliminary to an-
other put to the same witnesses, founded on the same state of
facts,—whether such result which had occurred was reasonably cer-
tain,—which was also answered in the affirmative. The answer to
the former question was included in that to the latter, and there-
fore the matter of its admissibility requires no consideration.

No error is seen in any of the rulings to which exception was
taken by the defendant brewing company. The question whether
reasonable precaution on the part of the defendant required it to
supply a brake for the truck was properly treated as one for the
jury. Brakes were in use on some wagons of that character em-
ployed to convey heavy loads, as was this one; and that a brake
on the truck would have been a prudent provision was somewhat
indicated by the occurrence in question.

The appeal taken from the judgment entered upon the dismissal
of the complaint as to the defendant railroad company requires
some consideration. The evidence tends to prove that the car was
moving rapidly on a descending grade; that, when it was 60 or
70 feet from the gateway, the horses drawing the beer wagon ap-
peared to the view of persons on the car, and were going on a trot
down into the street, and that the rapid movement of the car
was not slacked until the collision took place. The counsel for
the railroad company assumes in his statement of facts that the
driver of the truck first turned the horses to left, towards Meserole
street, and suddenly thereafter reined them to the right, thus caus-
ing the collision, and thereupon asserts that, in view of the dis-
tance from the wall of the brewery premises to the track of the
railroad, the driver of the car, until that sudden turn to the right,

and too late to avoid the collision, could reasonably suppose that the brewery team would keep away from the track of the railroad. Whether or not the driver of the brewery wagon did so turn his horses to the left, and then to the right, or came straight down the incline into the street, or turned to the right at all, were disputed questions of fact upon the evidence. At all events, the conclusion was required that the collision occurred about opposite the gateway. This took place in the daytime, and it may, upon the evidence, be assumed that the movement of the truck into the street may have been and was seen from the car in time to enable those having charge of its operation to have reduced its speed, and, if deemed necessary, stayed its movement, and thus avoided the accident. It is very likely that the driver of the car did not suppose he was approaching a collision. But it cannot be said, as matter of law, that there was no occasion for him to apprehend the possibility that the wagon, going with its rapidity towards the track, might not turn without reaching it. He could not justify the taking of any chances involving considerations of danger to the passengers if it could be avoided without. The responsibility of a common carrier of passengers is such as to require a high degree of care for their safety so far as it is dependent upon the means employed, and upon those engaged in that business; and the discharge of the duty requires of such a carrier the exercise of great care and vigilance,—all that human foresight may suggest to secure the safety of passengers. Palmer v. Canal Co., 120 N. Y. 170, 24 N. E. 302, and cases there cited. In view of the circumstances furnished by the evidence, the question was presented as one of fact for the jury whether the defendant railroad company failed to exercise the care to which the plaintiff's intestate, as its passenger, was entitled from it for her safety, and, if they so found, the further question for their consideration would follow whether her injury was the consequence of such failure. Barrett v. Railroad Co., 45 N. Y. 628; Hill v. Railroad Co., 109 N. Y. 239, 16 N. E. 61. And therefore the dismissal of the complaint as to that defendant, at the close of the evidence on the part of the plaintiff, was error.

It is, however, urged by counsel that the plaintiff is not entitled to reversal of the judgment against him, because his appeal is inconsistent with the judgment entered against the brewing company, since the action was brought against both defendants jointly. If the fact existed and was made to appear that the plaintiff had collected or satisfied the judgment against the brewing company, that contention would be supported, as the plaintiff could have the satisfaction of recovery or claim against one of the defendants only. Such is the effect of the cases cited by the counsel for the railroad company. Knapp v. Brown, 45 N. Y. 207; Alexander v. Alexander, 104 N. Y. 643, 10 N. E. 37. But the recovery of a judgment against one of two joint wrongdoers is, until paid or satisfied, no bar to the prosecution of an action for the same cause against the other one of them; and the situation in that respect and for such purposes is rendered no different by the fact that they are joined in the same action, when they have become severed for the purposes of

the trial, or when questions arise upon the trial for review as to one of them only. Then the legal controversy may proceed as to the one defendant, although, as between the plaintiff and the other defendant, final judgment has been entered. No reason, therefore, appears for denial to the plaintiff of the right to review the recovery by the defendant railroad company against him.

It follows that the judgment against the defendant brewing company should be affirmed, and that the judgment recovered by the defendant railroad company should be reversed, and a new trial granted as to that defendant; costs to abide the event. All concur.

(19 Misc. Rep. 180.)

GRAFSTROM v. FROST COUNCIL, NO. 21, ORDER OF CHOSEN FRIENDS.

(Supreme Court, Appellate Term, First Department. January 25, 1897.)

BENEFICIAL ASSOCIATIONS—MEMBER'S RIGHT TO BENEFITS—RETROACTIVE BY-LAWS.
An amendment of the by-laws cannot make past acts of a member a bar to the right to benefits, though the constitution reserves to the association the right to amend its by-laws, since such an amendment is not reasonable.

Appeal from Fourth district court.