ALEXANDER KEEGAN, Respondent, *v.* THE THIRD AVENUE RAILROAD
COMPANY and JOHN HUNT, Appellants.

*Negligence — passenger injured in a collision in which a street railroad car is run
into by a wagon — liability of the railroad company — when it is the duty of a
railroad company to use the highest degree of care — objection to testimony compe-
tent as to one of several defendants.*

A street railroad company is not necessarily freed from liability to a passenger
injured in a collision between one of its cars and a wagon, because the wagon
struck the car instead of the car striking the wagon.

The question whether a street railroad company is called upon to exercise
"great care and vigilance, all that human foresight might suggest," depends
upon the conditions existing at the time.

Where an action is brought against two defendants having conflicting interests,
an objection to a question tending to elicit a fact material as against one of
them is not well taken. If the answer is incompetent and prejudicial to the
other defendant, a motion to strike it out should be made and an exception
taken to the denial thereof.

VAN BRUNT, P. J., dissented.

APPEAL by the defendants, The Third Avenue Railroad Com-
pany and another, from a judgment of the Supreme Court in favor
of the plaintiff, entered in the office of the clerk of the county of
New York on the 14th day of February, 1898, upon the verdict of
a jury for $3,000, and also from an order entered in said clerk's
office on the 7th day of March, 1898, denying the defendants'
motion for a new trial made upon the minutes.

*Eugene Treadwell,* for the Third Avenue Railroad Company,
appellant.

*William C. Beecher,* for the respondent.

BARRETT, J.:

The action is for negligence. The plaintiff was injured on August
30, 1894, while riding on one of the defendant company's open cars,
south bound. He was sitting on the easterly side of the car near the
rear. Some little distance south of Fifty-eighth street this car met
a wagon belonging to the defendant Hunt, which was coming north
on the easterly track. Behind the wagon was a north-bound car.

In attempting to get out of its way the wagon crossed to the west, and, as the great preponderence of evidence shows, collided with the rear of the south-bound car, striking and injuring the plaintiff.

We think the issues of negligence and freedom from contributory negligence were for the jury.  The undisputed evidence shows that the gripman of the south-bound car ran across Fifty-eighth street at the full speed of the cable, and the driver of the wagon was plainly negligent in attempting to cross in front of it.   There is also abundant evidence to show that the driver first started to cross while the car was still about seventy-five feet away.   If the gripman had been keeping a proper lookout, he would have observed this attempt and slackened his speed.   He was not absolved from blame because the wagon struck the car instead of the car striking the wagon.   A heavy wagon like the one in question could not stop at once, and there was evident danger in its movement toward the west track, even though it did not get over soon enough to receive the direct blow of the car.   A defendant company has often been held liable, although its own car was the one struck in the collision.   (*Hurley v. N. Y. & Brooklyn Brewing Co.*, 13 App. Div. 167; *Loudoun v. Eighth Avenue R. R. Co.*, 16 id. 152.)   We need not dwell further upon the facts, or upon the questions of law connected therewith.

Apart from their consideration, the main question of law presented upon this appeal is as to the correctness of the learned trial judge's charge in a single particular.   After adverting to the fact that the plaintiff was a passenger upon the defendant company's car at the time of the accident, he stated the rule of law by which the jury should be governed in the following words:

"Now there is perhaps some difference in the obligation which rested upon the servants of the two defendants *immediately prior to the happening of this* accident.   The plaintiff was a passenger upon the car of the defendant, the railroad company.   In such cases the law says that while the company is not to be considered as an insurer of its passengers' safety against all possible injuries, yet that it is bound to use a high degree of skill and vigilance to guard against accidents from which its passengers may suffer injuries, and that it has not fulfilled this duty unless it has used the utmost care and diligence which human skill and foresight will suggest."

This was subsequently accentuated when the learned judge specifi-

cally charged the two following propositions as requested by the plaintiff :

"That the responsibility of a common carrier of passengers is such as to require a high degree of care for their safety, and the discharge of this duty requires of such a carrier the exercise of all the care and vigilance that human foresight may suggest to secure the safety of its passengers.    *    *    *

"If it was possible by the exercise of great care and vigilance, all that human foresight might suggest, for the gripman to have avoided the collision and consequent injury to plaintiff, and he failed to use such care and vigilance, then he was negligent, and the railroad was responsible for the consequence to plaintiff."

To the charge as thus made the defendants duly excepted.

We think this charge was correct, and that the defendants' exceptions thereto were not well taken.    Indeed we would have had no doubt upon the subject but for the view which the learned counsel for the appellants takes of the decision of the Court of Appeals in the late case of *Stierle* v. *Union Railway Company* (156 N. Y. 70). The trial judge's charge was in accordance with what we understand to be the settled rule of law in this State applicable to the facts here presented to the jury.    (*Bowen* v. *N. Y. C. R. R. Co.*, 18 N. Y. 408 ; *Brown* v. *N. Y. C. R. R. Co.*, 34 id. 404 ; *Maverick* v. *Eighth Ave. R. R. Co.*, 36 id. 375 ; *Barrett* v. *Third Ave. R. R. Co.*, 45 id. 628 ; *Taber* v. *D., L. & W. R. R. Co.*, 71 id. 489 ; *Coddington* v. *Brooklyn Crosstown R. R. Co.*, 102 id. 66.)    It is claimed that the rule in question is not applicable to street cars drawn by horses or propelled by a cable ; and *Unger* v. *Forty-second Street R. R. Co.* (51 N. Y. 497) is cited in support of this contention.    It will appear, however, from an examination of that case that the plaintiff there was not a passenger upon the defendant's road.    She was simply a pedestrian who was injured by the defendant's horses, which had broken loose from the car, and were running away. Judge Earl's observations upon the degree of care which the defendants were there called upon to exercise had relation to these facts and to these only.    That he did not intend to modify the general rule with regard to the degree of care required in the protection of passengers is apparent from what follows his discussion of the rule applicable to the pedestrian plaintiff.    "But whatever degree of

care," he says (p. 502), " may be required of street railway companies, *as to the passengers which they carry*, their cars are no more dangerous *to pedestrians in the street* than carriages, omnibuses or any other vehicles drawn by horses." We may assume, therefore, that no special exemption from the wholesome general rule which has for many years continuously prevailed in this State was intended to be granted to any particular class of carriers of passengers.

We have also carefully examined the *Stierle Case* (*supra*); and we find nothing in Judge GRAY's opinion to justify the claim of the present appellant. What we understand to have been decided in that case is simply that the general rule to which we have adverted was not applicable to its particular facts. The accident there occurred while the driver of the defendant's car was changing his car from one track to another over a switch, in order to cross a bridge. This presented no situation of danger, and called for no special exercise of extreme vigilance. No accident could have been apprehended from such an act. It was almost routine work. It called, of course, for reasonable care. Every act of the driver of a car, however simple and ordinary, calls for that. Where, however, there is nothing whatever in the surroundings to evoke the slightest sense of danger, the degree of care required is simply that which is commensurate to the existing conditions. A rule which called upon every driver or motorman, at all times and under all circumstances, to keep himself keyed up to the highest pitch of vigilance would be senseless. He should never, it is true, be heedless or forgetful of his duty. He should, in fact, at all times be watchful and prepared for emergencies. When, however, the law imposes upon him a still higher degree of care, namely, the exercise of all the vigilance that human foresight can suggest, it naturally refers to conditions calling for that extreme degree of vigilance. It is not so unreasonable, *par example*, as to demand constantly strained eyes from the lookout over a perfectly clear horizon.

In the original opinion in the *Stierle* case the court, in its general language, apparently limited the obligation of carriers of passengers to exercise the highest degree of care which human prudence and foresight can suggest to unsafe appliances. That, however, it was not intended to thus limit the rule was clearly and emphatically stated in the opinion on the motion for a reargument. (156 N. Y.

684.) Indeed, it was there said that the strict rule "would be proper in a case where the accident resulted from a situation from which grave injury might be expected and which, therefore, imposed upon the carrier's servants the duty to exercise the utmost skill and foresight to avoid it." Judge GRAY referred, with approval, to the *Maverick* and the *Coddington Cases* (*supra*), and said that the application of the strict rule of duty in the former case was warranted by the situation. The situation in the present case was just as obviously a dangerous one as was that in the *Maverick* case.

It should be observed, too, that in his general charge the learned trial judge explicitly confined the propositions above quoted to the particular situation "immediately prior to the happening of this accident." He also observed, when speaking of the gripman's duty, that it commenced at the time Hunt's driver began to swing his cart across the westerly track. It seems quite clear, therefore, that, taking the charge in its entirety, the strict rule was laid down solely with regard to the conditions existing at the moment when the danger became obvious, and that the jury could not possibly have been misled into applying it to other and less grave conditions. The charge, as a whole, was thus within the principle stated in the *Stierle* case as explained in the opinion upon the motion for a reargument.

There is only one other exception which calls for special consideration. The plaintiff, upon his redirect examination, testified to admissions made to him by the defendant Hunt with respect to the latter's ownership of the wagon and as to the driver's agency. Thereupon Hunt's counsel cross-examined the plaintiff with regard to the conversation in which Hunt was said to have made the admissions. The plaintiff replied to Hunt's counsel that he did not exactly remember what Hunt had said. The cross-examination then proceeded as follows: " Q. How did you come to state to your own counsel what he said and you can't recall it when I ask you the question? A. I remember what he said to another person; I don't know what other person was there. Q. What did he say to this other person? A. He was describing the accident. Mr. Lauterbach: That is objected to as irrelevant, incompetent and immaterial and not evidence against the defendant, the Third Avenue Railroad Company. The Court: I am obliged to take it as against the other defendant. [Exception taken by counsel for the Third Avenue

Railroad Company.]   Q. What did he say to this other person? A. To the best of my knowledge he said that his cart was going uptown and the car struck him and knocked the horse down and the shaft broke in two and hit me in the head.   That is, Hunt said that."

The question here put to the plaintiff by Hunt's counsel was proper, and the objection of the defendant company was not well taken.   The plain object of the question was to weaken or neutralize Hunt's admissions as testified to by the plaintiff on his redirect examination.   It was perfectly competent as against Hunt.   As put, it apparently had no bearing whatever upon the defendant company. The answer as given, however, was plainly prejudicial to the latter. That, then, was the time when the defendant company should have objected.   If it had asked to strike out the answer, we cannot doubt that its application would have been granted.   Instead of that it relied upon its untenable exception to a question which was proper as against Hunt, and which called for no such answer against it as was given.

The judgment and order appealed from should be affirmed, with costs.

RUMSEY, INGRAHAM and McLAUGHLIN, JJ., concurred; VAN BRUNT, P. J., dissented.

Judgment and order affirmed, with costs.