KEEGAN v. THIRD AVE. R. CO. et al.

(Supreme Court, Appellate Division, First Department.    November 11, 1898.)

1. CARRIERS—STREET RAILROADS—COLLISIONS—QUESTIONS FOR JURY.
In an action against a street-railway company and the owner of a wagon for negligence, there was evidence that plaintiff sat on the east side of a south-bound car, near the rear. A short distance south of a street intersection, the car met the wagon, coming north on the east track in front of a north-bound car. To get out of the way of the car behind it, the wagon crossed to the west, and collided with the rear of the south-bound car, striking and injuring plaintiff. The gripman of the south-bound car ran it across the intersecting street at full speed, and the wagon driver first started to cross the west track when the car was, about 75 feet away. The wagon was a heavy one, and could not be stopped at once. Held, the issue of negligence was for the jury.

2. SAME—RULE OF CARE REQUIRED.
The rule requiring a carrier of passengers to exercise all the care that human skill and foresight may suggest to secure their safety applies to street cars propelled by a cable.

3. EVIDENCE—ADMISSION AS TO PARTICULAR DEFENDANT.
In an action for personal injuries alleged to have been caused by the negligence of two defendants, plaintiff testified to admissions of one defendant to him, tending to show his liability only, and on cross-examination as to how he came to state to his own counsel what defendant said, and yet not be able to recall it when defendant's counsel asked the question, he answered that he remembered what this defendant said to another person. He was then asked, against the other defendant's objection, what was said to this other person. Held, that the question was competent against the defendant whose admissions he had testified to.

4. TRIAL—EVIDENCE—OBJECTIONS—MOTION TO STRIKE.
Where the answer given to a question competent against one defendant is uncalled for, and is prejudicial to another defendant, the injured defendant should move to strike it out. An objection to the question is insufficient.

Van Brunt, P. J., dissenting.

Appeal from trial term, New York county.

Action by Alexander Keegan, Jr., against the Third Avenue Railroad Company and another. From a judgment for plaintiff, and an order denying a new trial, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Eugene Treadwell, for appellant Third Ave. R. Co.

William C. Beecher, for respondent.

BARRETT, J. The action is for negligence. The plaintiff was injured on August 30, 1894, while riding on one of the defendant company's open cars, south bound. He was sitting on the easterly side of the car, near the rear. Some little distance south of Fifty-Eighth street, this car met a wagon belonging to the defendant Hunt, which was coming north on the easterly track. Behind the wagon was a north-bound car. In attempting to get out of its way, the wagon crossed to the west, and, as the great preponderance of evidence shows, collided with the rear of the south-bound car, striking and injuring the plaintiff. We think the issues of negligence and freedom from contributory negligence were for the jury. The undisputed evidence shows that the gripman of the south-bound car ran across Fifty-Eighth street at the full speed of the cable; and the driver of the wagon was plainly negligent in attempting to cross in front of it. There is also abundant evidence to show that the driver first started to cross while the car was still about 75 feet away. If the gripman had been keeping a proper lookout, he would have observed this attempt, and slackened his speed. He was not absolved from blame because the wagon struck the car, instead of the car's striking the wagon. A heavy wagon like the one in question could not stop at once; and there was evident danger in its movement towards the west track, even though it did not get over soon enough to receive the direct blow of the car. A defendant company has often been held liable, although its own car was the one struck in the collision. Hurley v. Brewing Co., 13 App. Div. 167, 43 N. Y. Supp. 259; Loudoun v. Railroad Co., 16 App. Div. 152, 44 N. Y. Supp. 742.

We need not dwell further upon the facts or upon the questions of law connected therewith. Apart from their consideration, the main question of law presented upon this appeal is as to the correctness of the learned trial judge's charge in a single particular. After adverting to the fact that the plaintiff was a passenger upon the defendant company's car at the time of the accident, he stated the rule of law by which the jury should be governed in the following words:

"Now, there is perhaps some difference in the obligation which rested upon the servants of the two defendants immediately prior to the happening of this accident. The plaintiff was a passenger upon the car of the defendant, the railroad company. In such cases the law says that, while the company is not to be considered as an insurer of its passengers' safety against all possible injuries, yet that it is bound to use a high degree of skill and vigilance to guard against accidents from which its passengers may suffer injuries, and that it has not fulfilled this duty unless it has used the utmost care and diligence which human skill and foresight will suggest."

This was subsequently accentuated when the learned judge specifically charged the two following propositions, as requested by the plaintiff:

"That the responsibility of a common carrier of passengers is such as to require a high degree of care for their safety, and the discharge of this duty requires of such a carrier the exercise of all the care and vigilance that human foresight may suggest to secure the safety of its passengers."

"If it was possible by the exercise of great care and vigilance, all that human foresight might suggest, for the gripman to have avoided the collision and consequent injury to plaintiff, and he failed to use such care and vigilance, then he was negligent, and the railroad was responsible for the consequence to plaintiff."

To the charge as thus made, the defendants duly excepted. We think this charge was correct, and that the defendants' exceptions thereto were not well taken. Indeed, we would have had no doubt upon the subject but for the view which the learned counsel for the appellant takes of the decision of the court of appeals in the late case of Stierle v. Railway Co., 156 N. Y. 70, 50 N. E. 419. The trial judge's charge was in accordance with what we understand to be the settled rule of law in this state applicable to the facts here presented to the jury. Bowen v. Railroad Co., 18 N. Y. 408; Brown v. Railroad Co., 34 N. Y. 404; Maverick v. Railroad Co., 36 N. Y. 378; Barrett v. Railroad Co., 45 N. Y. 628; Taber v. Railroad Co., 71 N. Y. 489; Coddington v. Railroad Co., 102 N. Y. 66, 5 N. E. 797.

It is claimed that the rule in question is not applicable to street cars drawn by horses or propelled by a cable; and Unger v. Railroad Co., 51 N. Y. 497, is cited in support of this contention. It will appear, however, from an examination of that case, that the plaintiff there was not a passenger upon the defendants' road. She was simply a pedestrian, who was injured by the defendants' horses, which had broken loose from the car, and were running away. Judge Earl's observations upon the degree of care which the defendants were there called upon to exercise had relation to these facts, and to these only. That he did not intend to modify the general rule with regard to the degree of care required in the protection of passengers is apparent from what follows his discussion of the rule applicable to the pedestrian plaintiff. "But whatever degree of care," he says (page 502), "may be required of street-railway companies as to the passengers which they carry, their cars are no more dangerous to pedestrians in the street than carriages or any other vehicles drawn by horses." We may assume, therefore, that no special exemption from the wholesome general rule which has for many years continuously prevailed in this state was intended to be granted to any particular class of carriers of passengers.

We have also carefully examined the Stierle Case, supra, and we find nothing in Judge Gray's opinion to justify the claim of the present appellant. What we understand to have been decided in that case is simply that the general rule to which we have adverted was not applicable to its particular facts. The accident there occurred while the driver of the defendant's car was changing his car from one track to another over a switch, in order to cross a bridge. This presented no situation of danger, and called for no special exercise

of extreme vigilance. No accident could have been apprehended from such an act. It was almost routine work. It called, of course, for reasonable care. Every act of the driver of a car, however simple and ordinary, calls for that. Where, however, there is nothing whatever in the surroundings to evoke the slightest sense of danger, the degree of care required is simply that which is commensurate to the existing conditions. A rule which called upon every driver or motorman, at all times and under all circumstances, to keep himself keyed up to the highest pitch of vigilance, would be senseless. He should never, it is true, be heedless or forgetful of his duty. He should, in fact, at all times, be watchful and prepared for emergencies. When, however, the law imposes upon him a still higher degree of care,—namely, the exercise of all the vigilance that human foresight can suggest,—it naturally refers to conditions calling for that extreme degree of vigilance. It is not so unreasonable, for example, as to demand constantly strained eyes from the lookout over a perfectly clear horizon. In the original opinion in the Stierle Case, the court, in its general language, apparently limited the obligation of carriers of passengers to exercise the highest degree of care which human prudence and foresight can suggest, to unsafe appliances. That, however, it was not intended to thus limit the rule, was clearly and emphatically stated in the opinion on the motion for a reargument. 156 N. Y. 684, 50 N. E. 834. Indeed, it was there said that the strict rule "would be proper in a case where the accident resulted from a situation from which grave injury might be expected, and which therefore imposed upon the carrier's servants the duty to exercise the utmost skill and foresight to avoid it." Judge Gray referred with approval to the Maverick and the Coddington Cases, supra, and said that the application of the strict rule of duty in the former case was warranted by the situation. The situation in the present case was just as obviously a dangerous one as was that in the Maverick Case. It should be observed, too, that, in his general charge, the learned trial judge explicitly confined the propositions above quoted to the particular situation "immediately prior to the happening of the accident." He also observed, when speaking of the gripman's duty, that it commenced at the time Hunt's driver began to swing his cart across the westerly track. It seems quite clear, therefore, that, taking the charge in its entirety, the strict rule was laid down solely with regard to the conditions existing at the moment when the danger became obvious, and that the jury could not possibly have been misled into applying it to other and less grave conditions. The charge as a whole was thus within the principle stated in the Stierle Case, as explained in the opinion upon the motion for a reargument.

There is only one other exception which calls for special consideration. The plaintiff, upon his redirect examination, testified to admissions made to him by the defendant Hunt with respect to the latter's ownership of the wagon, and as to the driver's agency. Thereupon Hunt's counsel cross-examined the plaintiff with regard to the conversation, in which Hunt was said to have made the admissions. The plaintiff replied to Hunt's counsel that he did not ex-

actly remember what Hunt had said.  The cross-examination then proceeded as follows:

"Q. How did you come to state to your own counsel what he said, and you can't recall it when I ask you the question?  A. I remember what he said to another person.  I don't know what other person was there.  Q. What did he say to this other person?  A. He was describing the accident— Mr. Lauterbach: That is objected to as irrelevant, incompetent, and immaterial, and not evidence against the defendant the Third Avenue Railroad Company.  The Court:  I am obliged to take it as against the other defendant.  (Exception taken by counsel for the Third Avenue Railroad Company.)  Q. What did he say to this other person?  A. To the best of my knowledge, he said that his cart was going uptown, and the car struck him, and knocked the horse down, and the shaft broke in two, and hit me in the head; that is, Hunt said that."

The question here put to the plaintiff by Hunt's counsel was proper, and the objection of the defendant company was not well taken. The plain object of the question was to weaken or neutralize Hunt's admissions as testified to by the plaintiff on his redirect examination. It was perfectly competent as against Hunt.  As put, it apparently had no bearing whatever upon the defendant company.  The answer as given, however, was plainly prejudicial to the latter.  That, then, was the time when the defendant company should have objected. If it had asked to strike out the answer, we cannot doubt that its application would have been granted.  Instead of that, it relied upon its untenable exception to a question which was proper as against Hunt, and which called for no such answer against it as was given.

The judgment and order appealed from should be affirmed, with costs.  All concur, except VAN BRUNT, P. J., dissenting.