### CONWAY v. BROOKLYN HEIGHTS R. CO. et al.

(Supreme Court, Appellate Division, Second Department. April 24, 1903.)

1. CARRIERS—INJURY TO PASSENGER—MEASURE OF CARE—INSTRUCTIONS.

In an action against a street car company for personal injuries sustained by a passenger from a collision between the car and a wagon, it appeared that the wagon was approaching from the direction towards which the car was going, and that because of the heavy load the driver was unable to turn out as quickly as he might ordinarily have done, as a result of which the stanchions at the middle of the car struck the rear bags of cotton with which the wagon was loaded, shattering the handles, and injuring plaintiff by the flying splinters. *Held*, that the situation was not one from which grave injury might have been expected, and hence a charge that the street car company was bound to exercise the highest degree of care and skill which human foresight could provide was erroneous.

Appeal from Trial Term, Queens County.

Action by Annie E. Conway against the Brooklyn Heights Railroad Company and another. From a judgment for plaintiff, and

from an order denying a motion for a new trial, defendant Brooklyn Heights Railroad Company appeals. Reversed.

I. R. Oeland, for appellant.
A. H. Dailey, for respondent Conway.
Martin Wechsler, for respondent Ferris.

JENKS, J.  The actionable negligence of the railroad corporation turns upon the proposition whether it failed in its legal obligation when it did not arrest its car.  If the motorman was apprised, or in the exercise of proper care should have been apprised, that his obligation to his passengers required him to stop the car in order to prevent the collision, and could, in the exercise of such care, have done so, and thereby avoided the collision, then liability for the injury consequent upon his omission may be cast upon the defendant.  I think that the learned court erred when it charged the jury that the defendant was bound to "the highest degree of care and skill which human foresight could provide."  There is such an obligation upon the common carrier of passengers as stated in the clause quoted.  Coddington v. The Brooklyn Crosstown R. R. Co., 102 N. Y. 66, 5 N. E. 797, approved in Stierle v. Union Railway Co., 156 N. Y. 684, 50 N. E. 834; Koehne v. N. Y. & Queens County R. Co., 32 App. Div. 419, 52 N. Y. Supp. 1088, affirmed in 165 N. Y. 603, 58 N. E. 1089.  But the present application of the rule depends upon the circumstances of this case,  In Coddington's Case, supra, the street railroad track was crossed by the track of a steam railroad, and a passenger on the defendant's car was struck by a locomotive passing on the steam railroad track.  The court said that under such circumstances the obligation of the defendant was to use the highest degree of care and prudence—the utmost human skill and foresight.  Several decisions cited by the court are instructive.  In Ingalls' Case, 9 Metc. (Mass.) 1, 43 Am. Dec. 346, the hind axle of the coach broke without apparent cause, one of the hind wheels of the coach came off, the coach settled, and the plaintiff, a passenger, in fright leaped from the top of the coach, and was injured.  In Hegeman's Case, 13 N. Y. 9, 64 Am. Dec. 517, a passenger on a steam railroad car was injured in consequence of the break of an axle.  In Bowen's Case, 18 N. Y. 408, 72 Am. Dec. 529, the declaration was upon the careless running of the train, and the failure to maintain fences, whereby the defendant's engine struck a stray upon the track, and the train was thrown from the rails.  Deyo's Case, 34 N. Y. 9, 88 Am. Dec. 418, was the affirmance of a nonsuit, and the opinion simply declares the principle.  In Maverick's Case, 36 N. Y. 378, the street car was followed for several blocks by a hook and ladder truck speeding to a fire, confined by the obstruction of the street to the rails.  The conductor stopped the car when the truck was within 15 or 20 feet of it, and led the passenger out to the rear platform of the car, where she was injured.  In Caldwell's Case, 47 N. Y. 282, a passenger was injured by the explosion of a boiler in a steamboat, and the plaintiff gave evidence of defective construction and of carelessness of those in charge.  In the Stierle Case, supra, where the degrees

of care were directly presented, Gray, J., in speaking of the rule of
the highest degree of care, says:

"The strict rule embodied in the plaintiff's subsequent request to charge
would be proper in a case where the accident resulted from a situation from
which grave injury might be expected, and which therefore imposed upon
the carrier's servants the duty to exercise the utmost skill and foresight to
avoid it. Such was the situation, for instance, in the Maverick Case, 36 N.
Y. 378, and in the Coddington Case, 102 N. Y. 66 [5 N. E. 797]."

The question, then, is whether, under the evidence in this case, the
accident resulted from a situation from which grave injury might
have been expected, so as to impose the highest obligation short of
insurance. The plaintiff was a passenger on the defendant's street
surface trolley car. Two car tracks on Grand avenue and Metro-
politan avenue, respectively, converge at a switch so as to form two
tracks a short distance from the Grand street bridge, and these two
tracks extend along the street and across the bridge. The car was
approaching the switch before coming to the bridge, and the heavy
wagon of the codefendant was coming in an opposite direction down
a grade. Both car and wagon continued to approach one another
and met, but there was no collision until the truck was turned aside
by its driver. Then the rear bags of cotton with which it was loaded
struck the wooden handles or stanchions at the middle of the car,
shattering them so that the plaintiff was injured by the flying splin-
ters. The driver of the wagon testified that in consequence of the
weight of his vehicle, its load, and the down grade, he could not ar-
rest his horses or stop his wagon; that he kept on the tracks—kept
his wheels between the tracks to travel on the hard pavement—for if
he had kept outside he would "get stuck in the softer ground, and
with that heavy load it would have been quite a hard thing to get out
of there." He also testified:

"When I see the car coming up, then I was trying to get out myself, but
couldn't, because I had the right wheel inside the track, and the wagon was
pretty heavy. And I could not get out of the track with the hind wheels,
and the hind part of the wagon and the hind bales, you know, bumped
up against the car. * * * My wagon swung round and struck the side
of the car."

Thus it is apparent that the driver, attempting to give way by
clearing one of the rails along which the car was approaching, turned
out; but not quickly enough to prevent the load on the rear of his
wagon from striking the middle of the car; for, plainly, his turnout
from the track swung the rear of the wagon towards the center of
the passing car. The driver also testified that when he saw the car
it was coming up to the bridge, and that he was going down the
grade; that he thought the car would stop at the switch, but it did
not, and then he made a motion with his hands to make the motor-
man stop his car, but he did not. In another part of his testimony
he says that he made a shout; at another, that he made a motion.
The plaintiff's witness May testified that the truck was coming at a
regular gait—walking. The driver says that he was going as slow
as he could, and that after the accident he went about 40 or 50 feet
from the car before he could stop on level ground. Plaintiff's wit-

nesses May and Steckelmann testified that the car was going slow at the time of the collision, and there is no evidence to the contrary. There was evidence tending to show that there were other vehicles crossing the bridge about this time, and the driver of the wagon testified that there was one wagon ahead of him. I think that the circumstances did not require an exercise of the "highest degree of care and skill which human foresight could provide." The car, of course, could not turn out, and it was on its way with a paramount right. The motorman saw nothing more than a heavily loaded wagon coming down a grade at a walk, and, presumably, he knew that it was the ultimate duty of that vehicle to give way to the car. There was nothing in the surrounding circumstances to indicate to him that the driver either would not or could not give way at the proper time by turning out from the rail. I do not overlook the alleged signals, but I think that the signals by "making of a shout" to the motorman to stop the car when the driver saw the car coming up towards the bridge and he was going down the grade, or by "just making a motion," or "something more than a motion—a motion with my hands" —when the heavy wagon was approaching at a regular gait, walking, was not sufficient to bring to the attention of the motorman, in his exercise of proper care, the fact that the continuance to drive the car slowly along its track would result in a situation from which grave injury might be expected, in view of the relative rights and duties of the two vehicles. It is very probable that, if the car had stopped, an accident would not have happened. But the accident which did happen was due to the inability of the driver of the truck to take himself out of the defendant's way in time to prevent, not a direct collision, but contact between the load at the rear of his truck and the middle of the moving car. The driver himself says he could not get out of the track with his hind wheels. If the learned court had gone no further than its charge that the defendant was bound to a high degree of care and skill in the operation of its car, or had even said that the degree should be very high, then the charge would have been unexceptionable under the circumstances of this case. Koehne v. N. Y. & Queens County R. Co., 32 App. Div. 419, 52 N. Y. Supp. 1088, affirmed in 165 N. Y. 603, 58 N. E. 1089.

The learned counsel for the respondent corporation insists that the rule of Keegan v. Third Avenue R. R. Co., 34 App. Div. 297, 54 N. Y. Supp. 391, affirmed in 165 N. Y. 622, 59 N. E. 1124, applies. That was a case of collision, but the circumstances which discriminate it were that the south-bound car, which bore the passenger, met a wagon coming north, which, attempting to get out of the way of a car following it, crossed to the west while the south-bound car was 75 feet away, and the gripman ran across the intersecting street at full speed, in the face of the evident danger involved in the movement of the wagon towards the track.

The judgment should be reversed, and a new trial be granted; costs to abide the event. All concur.