RAFFAELE SANTOLO, as Administrator, etc., of LUIGIA SAN-
TOLO, Deceased, Respondent, *v.* INTERBOROUGH RAPID
TRANSIT COMPANY, Appellant.

First Department, April 1, 1921. .

Street railways — action to recover for death of person injured in
door of subway train — death from lobar pneumonia — injury
not proximate cause of death.

In an action to recover for death it appeared that decedent, while she was
alighting from a subway train, was caught and squeezed between the
door and the door-jamb, bruising her left arm, shoulder and side;
that she was taken to a hospital but refused to remain there and
proceeded to her home by subway; that there was no fracture of any
bones; that pneumonia developed some three weeks after the accident;
that immediately following the accident examination showed no evidence
of pneumonia, and that a short time before pneumonia developed there
was some evidence that she was suffering from influenza.

*Held,* on all the evidence, that the accident was not the proximate cause
of the death from lobar pneumonia but that there was a competent
independent intervening cause between the negligent act of the defendant
and the death, and that a verdict in favor of the plaintiff was against
the evidence.

GREENBAUM, J., dissents, with opinion.

APPEAL by the defendant, Interborough Rapid Transit
Company, from a judgment of the Supreme Court in favor of
the plaintiff, entered in the office of the clerk of the county of
Bronx on the 18th day of February, 1920, on the verdict of a
jury for $8,000, and also from an order entered in said clerk's
office on the 5th day of March, 1920, denying defendant's
motion for a new trial made upon the minutes.

*J. Ralph Hilton* of counsel [*James L. Quackenbush,* attorney],
for the appellant.

*Frederick P. Close* of counsel [*Thomas G. Price* with him on
the brief; *Clark, Close & Davis,* attorneys], for the respondent.

PAGE, J.:

The action is brought by an administrator to recover damages
for negligently causing the death of the deceased. On Sep-
tember 24, 1918, while the decedent, accompanied by four
other women, was alighting from a down-town subway train

at the Fiftieth street station on the Lexington avenue line, the door of the train was closed by the guard and she was caught and squeezed between the door and the door-jamb, bruising her left arm, shoulder and side. The guard opened the door and her friends assisted the decedent to a chair. They told the ticket chopper and also the ticket agent of the accident. The latter inquired whether she desired him to send for a doctor and she said no, and the five women proceeded upstairs. In about fifteen minutes they returned and said that the decedent was suffering a great deal of pain and would like to have him send for a doctor, whereupon the doctor and an ambulance came from Bellevue Hospital and after an examination the doctor took the decedent to Bellevue Hospital, her friends following. The decedent refused to remain at the hospital and proceeded home by subway. A Dr. Rueck was called on the night of the day of the accident; and he testified that he found the decedent's left shoulder discolored, that she could not raise her left arm, and that she complained of pain in the entire left side of her chest. He made an examination and discovered that there was no fracture of any of the bones either of the arm or shoulder or of the ribs. He told her to apply wet dressings to the shoulder and put her arm in a sling. He attended her until the tenth day of October. He testified that during this time he made frequent examinations of the chest with a stethoscope and found no evidence of pneumonia; she had no temperature or sore throat. He testified further that he did not see the deceased again until the twenty-seventh day of October when she had lobar pneumonia on the left side in the last stage and also had rales in the other lung. He testified that the decedent did not have influenza and that he did not attend the children for influenza and that he did not report her to the board of health as suffering from influenza on October sixteenth, but when confronted with a report that he made to the board of health of influenza cases, dated on the sixteenth of October, in which he had reported the deceased and her five children suffering from influenza, he corrected his statement and said that he must have visited them on about that day as he gave the time of their having had the influenza as one day. On October eighteenth Dr. Crump, the family physician, called. He

testified that he had been summoned two days before, but had been unable to call on the deceased because that was the height of the influenza epidemic and he had been so occupied with other cases. When he called on the eighteenth, he found her suffering from lobar pneumonia. From this she died on the twenty-eighth day of October.

The defendant denied knowledge that any accident had happened, and called members of the train crew, who were stated to have been operating the train which the decedent claimed to have taken, and they testified that no such occurrence happened. But the ticket chopper and the station agent both admitted that the deceased and her friends spoke to them in regard to the accident and that the ticket agent sent for the doctor and ambulance. The defendant further contended that the death of the decedent was not occasioned by the injury sustained from the closing of the door.

The jury returned a verdict for the plaintiff for $8,000. The questions presented on this appeal are: Was the injury the proximate cause of the decedent's death, and was the verdict excessive?

Mr. Justice Rumsey has very clearly stated the rule to be applied in determining liability in a case of this character in *Weber* v. *Third Avenue R. R. Co.* (12 App. Div. 512, 514): " The question always is, was there an unbroken connection between the wrongful act and the injury — a continuous operation? Did the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? (*Milwaukee & St. Paul Railway Co.* v. *Kellogg*, 94 U. S. 469.) It is not necessary for the plaintiff, who claims that the injury was the proximate cause of the consumption of which this man died, to show that it was the only cause. It is sufficient if she establishes that the injury set in motion other causes which produced the disease and the death, but which, in the absence of this injury, would not have produced it. (*Pollett* v. *Long*, 56 N. Y. 200.) But this proof on the part of the plaintiff must be made by evidence which establishes the fact, and, unless the evidence is sufficient to show the connection between the immediate cause of the death and the injury received, the plaintiff cannot recover."

Tested by this rule, I am of opinion that the verdict was contrary to the weight of the evidence.   There appears to be a competent independent cause intervening between the negligent act of the defendant and the death.   If the decedent had influenza on or prior to October sixteenth, as would appear from the report filed by Dr. Rueck, it might have been the cause of her death.   It is well known that during the epidemic of influenza in 1918 pneumonia followed in many cases and a great many deaths from that cause followed the influenza without other cause.   The decedent's husband and a neighbor who called in daily and assisted with the housework and care of the children denied that the decedent had had influenza or that the children had influenza.   Therefore, the evidence that the defendant had influenza is limited to the report made by Dr. Rueck to the board of health.   That the pneumonia developed as a result of the injury to the arm and side would appear doubtful, from the fact that from September twenty-fifth to October tenth no symptoms of pneumonia were discovered, although a careful examination was made of the patient.

In the cases where an injury has been held to be the proximate cause of death resulting from consumption, pneumonia or other disease, there has been a continuous succession of events down to the time of the death, and a direct relation between the injury and the development of the disease.   (*Hurley* v. *N. Y. & Brooklyn Brewing Co.*, 13 App. Div. 167; *Purcell* v. *Lauer*, 14 id. 33; *Wood* v. *N. Y. Central & H. R. R. R. Co.*, 83 id. 604; *Eichholz* v. *Niagara Falls H. P. & M. Co.*, 68 id. 441; *Sallie* v. *New York City Railway Co.*, 110 id. 665; *Folts* v. *Robertson*, 188 id. 359.)   In the case under consideration, the only evidence that the pneumonia from which the decedent died was the result of the accident is the testimony of medical experts.   The evidence was conflicting as to the existence of a supervening influenza.

It is not necessary in the view we take of this case to consider the amount of the verdict.   Under the conditions of the proof, the judgment must be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., LAUGHLIN and SMITH, JJ., concur; GREENBAUM, J., dissents.

GREENBAUM, J. (dissenting):

The testimony of the medical experts called on behalf of plaintiff was that, in their opinion upon the state of facts assumed in the hypothetical question which embodied the testimony given in behalf of the plaintiff, pneumonia was due to her injury.

Dr. Maurice Fishberg testified: " In a case such as detailed just now in this hypothetical question, the injury was undoubtedly one of those factors which predispose to the development of pneumonia; whether influenza or not is immaterial." He also testified: " Now and then I see a case of lobar pneumonia which is not of influenza at all. It happens to be co-incidental."

Dr. Phillip F. O'Hanlon also testified to plaintiff's hypothetical question, which included the assumption that during the period of her illness the deceased was suffering from influenza, stating that the injury which she received on September twenty-seventh was a competent producing cause of the pneumonia which she had on October eighteenth and from which she died.

Dr. Rueck, who attended the deceased for a portion of the time between the injury and her death, also testified that the accident was a competent producing cause of the pneumonia from which the intestate died. It thus became a question of fact whether plaintiff had established by a preponderance of the evidence that the injury was a competent producing cause of the pneumonia. There was no exception taken to the charge of the court upon that subject. The jury's verdict should not lightly be disturbed. How much weight to attach to the testimony of the medical experts was a question for the jury to determine. It seems to me that the majority opinion lays entirely too much stress upon certain evidence given by the medical experts who testified in behalf of the defendant in which they stated that pneumonia following an injury usually develops anywhere from six to twenty-four hours to three or four days after exposure, and also to the assumption that the deceased had influenza during her last illness and that the pneumonia was a result of that disease.

With respect to the time when pneumonia would *manifest* itself after the injury Dr. O'Hanlon said that would be from

a few hours to six or seven days and explaining what he meant by that he testified as follows: " When I say that pneumonia would manifest itself I am speaking now in a purely pathological sense. That is the process of development of an injury in the lung, not that it may be perceptible or that it may be discovered, I am not discussing that, I am speaking of the pathological sequence that takes place after an injury or in a pneumonia from an infected character, whether it can be discovered or not depends largely upon the means and the ability of the person making the examination of the symptoms, that might call attention to the condition." Such was his testimony upon the cross-examination. He testified, on his direct when asked to explain what the term " traumatic pneumonia " is, as follows: " A traumatic pneumonia is a pneumonia following the application of violence in the form of blows or falls to the chest in which the lung itself becomes bruised. The first stage is a stage of inflammation — I mean the first stage is a stage of congestion. Then follows the stage of inflammation. The air cells — the lungs themselves are made up of blood vessels and air cells, the cells are lined with epithelium, the cells, and in the center a space for the air. As this inflammatory condition following congestion takes place, the air cells, like the bricks from a wall, fall into the opening, shutting off the opening and excluding all air. That is the meaning of pneumonia, absence of air in the air cells in the lungs. This extends along the line of least resistance, sometimes hops about from place to place, particularly in grippe — pneumonia, where we have what is called a patchy-pneumonia, that is, a pneumonia which may be compared to a ham with the skin taken off, where the women put the peppers all around it at different points, that is what I call a patchy pneumonia. As time goes on and the power of resistance lessens, and toxicity which is a fatal element in all pneumonias, the giving off of toxins from the bacteria themselves, these coalesce and run together, and you get lobular pneumonia, a small lobe around the bronchial tubes, or extension into the whole lobe, which is the lobe there. There are five lobes, two on the left side and three on the right side, separate compartments. Usually pneumonia begins in the lower lobe of the left lung, will go on to resolution, that

is, to cure.   If the pneumonia is the diplococcus pneumonia, the bug which is most often identified with pneumonia, in traumatic pneumonia, there is no invasion, no toxicity, no poisoning resulting, but the occlusion of the air is just as complete in one instance, because the inflammatory condition is brought about by violence in one instance and the inflammatory condition in the other instance is brought about by destructive toxin emanating from the bug itself, in the other instance, but the result is the same.   All pneumonia is the absence of air in the lung."

After thus explaining traumatic pneumonia in his own way, he gave it as his opinion that the death of the intestate from pneumonia some weeks after the accident to her resulted from the injury which she had received.

It also appears from the evidence that the influenza of 1918 was of a very puzzling nature and indeed it was a matter of common knowledge that the physicians knew very little about that dread disease.

Moreover, as bearing upon the question whether the injury resulted in pneumonia without an intervening independent cause which brought it about, the jury was justified in considering the evidence that, save for one hour, the deceased had been continuously confined to her bed from the day of the injury until the moment of her death.

It seems to me that it was peculiarly a question for the jury as to what caused her death and that upon the state of the proofs this court should not disturb their verdict.

The judgment should be affirmed, with costs.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.