CECELIA J. ZIMMER, an Infant, by CHARLES V. ZIMMER, her Guardian ad Litem, Respondent, *v.* THE THIRD AVENUE RAILROAD COMPANY and the METROPOLITAN STREET RAILWAY COMPANY, Appellants. (No. 1.)

*Negligence — passenger injured in a collision between a horse car and a cable car — duty of the driver of the horse car to sacrifice his superior right of way — one tort feasor cannot object to a charge too favorable to his co-tort feasor — duty of the carrier to its passenger — biased witness — evidence — amendment increasing the amount claimed.*

In an action to recover damages sustained by a passenger in a horse car, by reason of its collision at a street intersection with a cable car, the horse car company, although the horse car, by reason of its position prior to the collision, had the

superior right of way, is liable to the plaintiff if, notwithstanding the fact that the exercise of care on the part of its driver would have informed him that the cable car was proceeding in violation of his priority, and that his failure to sacrifice his superior right of way would put the passengers in the horse car in jeopardy, he does not, out of regard for the safety of his passengers, give way to the cable car and sacrifice his own right of way.

In an action against both the horse car company and the cable car company, neither defendant, if negligent itself, has a legal ground of complaint, because on the trial of the action the law, as laid down by the court, was stated too favorably to its co-defendant, or even if its co-defendant erroneously escaped liability.

In such a case the court may properly charge that the horse car company, "with respect to carrying plaintiff, was bound to exercise all the care and skill which human prudence and foresight can suggest to secure her safety at the crossing."

The father of the plaintiff, called as a witness on her behalf, may, on his cross-examination, properly be asked if he had not brought a suit against the defendants for the loss of the plaintiff's services, in order to show his interest or bias.

A physician who had attended the plaintiff during an illness previous to the accident in question, and testified that at the time of his attendance the plaintiff was suffering from peritonitis, and that he could tell the cause thereof, may properly, where the plaintiff waives the question of privilege and the answer would be material to the case, be required by the court to answer a question asked by the defendants as to the cause of the peritonitis.

The action of the trial court in allowing the plaintiff to amend her complaint by increasing her claim for damages rests in the discretion of the court and is not subject to review, except in a case of manifest abuse.

APPEAL by the defendants, The Third Avenue Railroad Company and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Queens on the 8th day of February, 1897, upon the verdict of a jury for $15,000, and also from orders entered in said clerk's office on the 11th day of February, 1897, and on the 18th day of February, 1897, denying the defendants' motions for a new trial made upon the minutes.

*Charles F. Brown* [*Henry A. Robinson* and *John T. Little, Jr.,* with him on the brief], for the appellant the Metropolitan Street Railway Company.

*Herbert R. Limburger* [*Henry L. Scheuerman* with him on the brief], for the appellant The Third Avenue Railroad Company.

*Ernest M. Welch*, for the respondent.

CULLEN, J.:

The action is for damages for personal injuries. The plaintiff was a passenger on one of the Metropolitan Street Railway Company's cars. This defendant has a single track on Houston street, in the city of New York, on which it propels cars by horses. Houston street crosses the Bowery substantially at right angles. The latter is a broad thoroughfare. Along the Bowery are four tracks, two operated by the Third Avenue Railroad Company and the other two by the Fourth Avenue Railroad Company. The Third Avenue Railroad cars at the time of the accident were all operated by cable. As the horse car on which the plaintiff was riding was proceeding across the intersection of the westerly track of the Third Avenue railroad it was struck by one of the cars of the latter company with sufficient violence to throw it from the track. By this collision the plaintiff was thrown to the floor of the car and received the injuries for which she brings suit.

We think the issue of negligence as to each of the defendants was for the jury, and that the motions to dismiss the complaint were properly denied. It may be that just before the collision the horse car was so near the point of intersection, as compared with the position of the cable car, that the horse car had the prior right to cross the intersection. But if this view of the situation be accepted, it would not necessarily relieve the Metropolitan Company from liability. The evidence tended to show that the cable car was moving toward the intersection at a rapid rate of speed, and that there was no appearance of any intention or disposition to check or stop that speed before the car reached the crossing. While it may be that the horse car had the superior right of way on account of its position, still the crossing was necessarily a place of some danger; and if care on the part of the driver of the horse car would have informed him that the cable car was proceeding in violation of his priority, and that such conduct would put the passengers of the horse car in jeopardy, he was bound out of regard for the safety of his passengers to sacrifice his own right of way. From this point of view the evidence was sufficient to charge both defendants with negligence, and the verdict of the jury was warranted.

The principal propositions of law in the charge of the trial court, of which the appellants complain and on account of which they seek

to reverse the judgment below, were charged at the request of one appellant or the other. In the body of the charge of the learned judge who presided at the trial, and in the instructions to the jury given at the request of the plaintiff, nothing is to be found which is subject to substantial criticism. But each of the defendants succeeded in getting the court to charge as to the negligence of its co-defendant. In only one respect had either defendant the right to ask instructions as to the negligence of the other. Each of the persons in control of a car had the right to assume that the other would not proceed over the crossing negligently and in violation of his rights; but beyond that neither defendant was entitled to instructions on the subject of the negligence of his co-defendant. The defendants were tort feasors, and no right of contribution existed between them. Neither defendant, if negligent itself, would have legal complaint because the law was laid down too favorably to its co-defendant, or even if that co-defendant erroneously escaped liability. The court, therefore, might properly have declined to charge many of the requests of the defendants regardless of whether these requests were correct in law or not. However, as to such requests as the court did charge, the source from which they proceeded was immaterial, and, if erroneous, the aggrieved party is entitled to reverse the judgment to the same extent as if the charge had not been made at the instance of its co-defendant.

At the request of the Third Avenue Railroad Company the court charged: "That the defendant, the Metropolitan Street Railway Company, with respect to carrying plaintiff, was bound to exercise all the care and skill which human prudence and foresight can suggest to secure her safety at the crossing at Houston street, while the Third Avenue Railroad Company was bound to use only ordinary care in the management of its cable car there; and if the jury finds that the gripman of the cable car used ordinary and reasonable care under the circumstances, the Third Avenue Railroad Company cannot be held liable in this action." To so much of this instruction as dealt with the measure of care which the Metropolitan Street Railway Company was bound to exercise, that company excepted. The learned counsel for that defendant insists that this charge imposed upon it greater diligence than the law requires. We do not feel it requisite to follow the counsel in his extended argument, as we regard the

question settled by authority. In *Maverick* v. *Eighth Avenue .R. R. Co.* (36 N. Y. 378) the plaintiff was injured while on the platform of a street car by its collision with a truck. It was held that "'passenger carriers bind themselves to carry safely those whom they take into their coaches, as far as human care and foresight will go, that is, to the utmost care and diligence of very cautious persons.'" It is true that this rule of a most strict diligence has been held by the later decisions not to apply in the case of every service rendered by a carrier to its passengers. Thus as to furnishing platforms and the like, its duty is only that of reasonable care. But to situations that are obviously dangerous, or may become so by the failure to exercise the highest degree of vigilance, the rule still obtains. In *Coddington* v. *The Brooklyn Crosstown R. R. Co.* (102 N. Y. 66) a most eminent and distinguished judge charged the jury with reference to the duty imposed on the driver of a horse car approaching the crossing of a steam railroad: "He was approaching what the law regarded as a dangerous place, and he was bound to use the highest degree of care and prudence; * * * this driver or this company is not relieved from liability unless they have satisfied the minds of the jury that this accident could not have been avoided by human foresight — by the utmost human skill and foresight." The charge was upheld by the Court of Appeals as a correct exposition of the law applicable to the particular occurrence. In *Stierle* v. *Union Railway Co.* (156 N. Y. 70) the plaintiff was injured in a horse car while the car was being moved from one track to another over a switch. The Court of Appeals held that as to such an operation an instruction that the defendant was bound to exercise all the care and skill that human prudence and foresight could suggest, was erroneous, and that the measure of the company's obligation was only that of reasonable care. It was thought by some that this decision was in conflict with the *Maverick* and *Coddington* cases, and had modified the law as laid down in those cases. But in an opinion delivered on a motion for a reargument in the *Stierle Case* (156 N. Y. 685), Judge GRAY pointed out that this view was erroneous, and that the strict rule of the earlier cases still " would be proper in a case where the accident resulted from a situation from which grave injury might be expected and which, therefore, imposed upon the carrier's servants the duty to exercise the utmost skill and foresight to avoid it." The

learned judge states that such was the situation in the *Maverick* case and the *Coddington* case, and the doctrine of those cases is apppoved. In the case before us, that of crossing the road of cable cars, the danger from collision was not as great as in the case of a steam railroad (*Coddington* case), but certainly greater than that likely to occur with trucks moving along the street (*Maverick* case). In all three cases the situations were dangerous, and though the danger in the several cases differed in degree, the same. rule of diligence is applicable to all.

The Metropolitan Company asked the court to charge: "If the gripman of the Third avenue cable car, when 75 feet north of the Avenue C tracks, then saw the horse car approaching through Houston street, the track on which his south-bound car was moving, it was negligence on his part in not stopping his car in time to avert the accident." To this the court responded: "I charge that with this qualification; if under all the circumstances of the case as they appear from the testimony he could have so done, then it was." To this charge as modified the Third Avenue Company excepted. It is urged that the court here erred, and the criticism is made on the charge that the question was not whether the gripman could have stopped his car, but whether he should have stopped his car. We are of opinion that, taking this request in connection with the previous charge of the court, and its action on the requests to charge made to it by the various parties, it did not import that it was negligence for the driver to fail to stop his car when seventy-five feet away from the intersection if at that time he saw a car approaching on the Houston street track, for such instruction would be simply nonsense. If at the time the gripman saw the horse car approaching, the horse car was many hundred feet away, of course there would be no propriety in stopping the cable car. The trial court had already refused to charge a substantially similar request, predicated on the cable car being thirty feet or more from the intersection. It could not have intended to lay down any more stringent rule when the car was seventy-five feet from the crossing. The fair purport of the instruction as we construe it is that if the gripman should and could have stopped his car when seventy-five feet away, then it was negligent of him not to have done so. If there was any danger of the jury misunderstanding the court in this

respect, it was the duty of the counsel for the defendants to have pointed out to the court the defect in the instruction. The fact is, however, that the battle of the defendants on the trial of this cause was not so much to gain a victory from the jury as to secure exceptions by which to escape the consequences of defeat. We are not criticising at all such a course. It was commendable from the point of view of the duty of the counsel to their clients; and if they have succeeded in obtaining good exceptions, they should not be deprived of the benefit of them. Still, an appellate tribunal should not be astute to discover, by refinements and hypercriticism, errors in the charge of a trial court in disposing of forty-three several requests to charge, made by the defendants, when it appears that the charge as a whole was fair and just, and correctly expounded the law applicable to the case.

The father of the plaintiff was a witness on her behalf. He testified that she had been well before the accident and confined to her bed since. On cross-examination he was asked if he had not brought a suit against the defendants for the loss of the plaintiff's services. This question was objected to and the objection sustained. We think the trial court erred in excluding this evidence, and that it should have permitted the question to be answered. It is always competent to show the interest or bias of a witness. (*Matter of Snelling*, 136 N. Y. 515; *Garnsey* v. *Rhodes*, 138 id. 461.) But the error was harmless. (*People* v. *Brooks*, 131 id. 321.) The father technically had not an interest in the recovery in this action. The judgment in this action could not be put in evidence in any action the father might bring. It was doubtless competent to show bias on the part of the witness, though he had no technical interest in the recovery. But the witness did not pose as disinterested. He testified that he was the father of the plaintiff, and she a member of his family dependent on him for support. At the request of one of the defendants the court instructed the jury that the father had a right of action for the loss of the plaintiff's services, and that he, not the plaintiff, could recover for the expenses of her illness; so the jury were informed that if the father had not brought an action, still he might bring one. It seems to us that proof that the witness had brought suit would show no substantial increase in the bias under which he must necessarily and apparently have labored as father of

the plaintiff, and as entitled to maintain an action for the injury to her.

The defendants called as a witness a physician who had attended the plaintiff during an illness previous to the accident in suit. He testified that at the time of his attendance the plaintiff was suffering from peritonitis. He was asked if he could tell the cause of that peritonitis, to which he replied in the affirmative. He was then asked to state the cause. This he refused to answer. The plaintiff waived all question of privilege, and the defendants asked the court to instruct the witness that he must answer. The court declined to give such instruction, so the question as to the cause of the peritonitis remained unanswered. To the ruling of the court the defendants excepted. The confidence between physician and patient, and the privilege which forbids a physician disclosing knowledge concerning his patient, acquired by virtue of his professional relations, is the privilege and confidence of the patient, not that of the physician. Therefore, when the plaintiff waived her privilege, the court could properly have compelled the witness to answer as to the cause of the plaintiff's disease. But there is nothing to show that the answer to the interrogatory would have been in any way material to the cause, nor did the defendants' counsel state what they expected would be the bearing of the testimony. It was claimed that the plaintiff was suffering from myelitis and locomotor ataxia. Through cross-examination the defendants' counsel had developed the fact that one of the most common causes of such diseases is constitutional syphilis. Any evidence to show that the plaintiff had had syphilis, or suffered from the inherited results of such malady, would have been material, and also competent, if it could be obtained without violating the privilege which guards against the disclosure by a physician of the condition of his patient. This privilege the plaintiff had waived. But there is not a suggestion that syphilis was the cause of the peritonitis, or that it is a possible cause of that disease. Unless the cause of the peritonitis had some relation to or bearing upon the malady from which it was alleged the plaintiff suffered at the time of the trial, an inquiry into that subject was wholly immaterial.

Complaint is also made of the permission given by the court on the trial to the plaintiff to amend her claim for damages by increas-

ing it from $10,000 to $50,000. This was a matter in the discretion of the court, and is not subject to review except in the case of manifest abuse. However, it is hardly worth while to discuss the question, as we think the verdict was excessive, and that to retain the benefits of the trial the plaintiff must reduce her recovery to the sum of $10,000.

The judgment and orders appealed from should be reversed and a new trial granted, costs to abide the event, unless the plaintiff stipulates to reduce the recovery of damages to $10,000, with extra allowance proportionately, in which case the judgment as reduced should be affirmed, without costs of this appeal to either party.

Judgment and orders reversed and new trial granted, costs to abide the event, unless within twenty days plaintiff stipulates to reduce recovery of damages to $10,000, and extra allowance proportionately, in which case the judgment as reduced is unanimously affirmed, without costs of this appeal to either party.