(92 App. Div. 100.)

### KLINGER v. UNITED TRACTION CO. et al.

(Supreme Court, Appellate Division, Third Department. March 2, 1904.)

1. STREET RAILROADS—INJURY TO PASSENGER—LIABILITIES.

The U. Railroad Company operated a double-track railway in a city, and the S. Railway Company operated its cars over the other company's tracks under an agreement that the other company should keep the track and switches in repair. The U. Company was repairing a portion of its west-bound track, and both east and west bound cars were obliged to use the east-bound track. A car of the U. Company, on which plaintiff was a passenger, while west bound, had crossed over to the east-bound track, while an east-bound car of the S. Company had been transferred to the

west-bound track, and had stopped with its east end about 10 feet west of the west end of the cross-over. Some one threw the tongue of the switch so that the S. Company's car could run easterly on the west-bound track, so as to permit the U. Company's car to pass over to that track, and continue westerly thereon. The motorman of the west car started it by letting off the brake, and the front truck passed the tongue of the switch, but the rear truck took the cross-over, throwing the rear end of the car against the U. Company's car, injuring plaintiff. *Held*, that both companies were liable.

2. SAME—CARE REQUIRED.

A street railway company is bound to use the utmost human skill in operating and keeping in repair its trains and switches to save a passenger from harm.

3. SAME—EVIDENCE.

Where the first two wheels of a street car passed safely over a switch, and the other two wheels were displaced, whereby a passenger was injured, under the doctrine of res ipsa loquitur the street car company was bound to explain the displacement

4. SAME—DEGREE OF CARE.

Where a car of a street railway company collided with a car of another street railway company, on which plaintiff was a passenger, whereby he was injured, the railway company on whose car plaintiff was not a passenger was bound to use towards him only reasonable and ordinary care under the circumstances confronting it at the time.

5. SAME—CARE OF MOTORMAN.

Where a motorman on a street car was using a switch in a manner in which it was not intended to be used, reasonable and ordinary care, to excuse the railway company from liability for injury to passenger on a car of another street railway company, required the motorman to proceed slowly and keep his car under control.

Houghton, J., dissenting in part.

Appeal from Order Entered on Report of Referee.

Action by Daniel Klinger, Jr., against the United Traction Company and the Schenectady Railway Company. From a judgment of the Supreme Court in favor of plaintiff for $850 damages, defendants appeal separately. Judgment affirmed as to both defendants.

The defendant traction company owns and operates a double-track surface railway in various streets in the city of Albany, including State street, Eagle street, and Washington avenue. The defendant the Schenectady Railway Company, by a traffic agreement between it and the defendant traction company, runs its cars over the tracks of the latter company on the streets named. Under the traffic agreement between the two defendants the duty was devolved upon the traction company of keeping the tracks and switches in connection therewith, over which the cars of the two companies were operated, in repair. Each of the defendants operated and managed its own cars by its own employés.

The plaintiff, while a passenger in one of the traction company's cars, was injured by a collision between that car and a car operated by the Schenectady Railway Company. On the 8th day of September, 1903, the day of the accident, the traction company was engaged in replacing the old rails of the west-bound track on the curve at State and Eagle streets with new rails, and for that reason at that time there was but one track in use at that place, and the entire traffic during the repairs to the track at that point was necessarily conducted on the east-bound track. The traction company had a permanent cross-over switch on Washington avenue, north of Capitol Park, from the east to the west bound track, west of the place where the west-bound track had been taken up; and, to facilitate the transfer of cars to the track so

¶ 3. See Carriers, vol. 9, Cent. Dig. § 1288.

being used, the traction company put in a temporary cross-over below Eagle street, on which east-bound cars crossed from the west to the east bound track. The switch tongue at the permanent cross-over was three or four feet long, secured by a pin at the heel or easterly end thereof, movable in an iron plate upon which it rested, so that, when the tongue was placed against the rail of the main track, it formed a complete joint, and a continuation of the main track. The traction company's car, upon which the plaintiff was a passenger, was one bound westerly. It crossed by the use of the temporary cross-over below Eagle street to the east-bound track, and stopped near the east end of the permanent cross-over north of Capitol Park. The Schenectady Railway Company's car came from the west on the east-bound track, and had been transferred over the permanent cross-over to the west-bound track, and stopped with its east end about 10 feet west of the west end of that cross-over. Some person, apparently acting on behalf of the traction company, threw the point of the tongue of the switch in the west-bound track, so that the car could run down easterly on that track for a distance sufficient to permit the traction company's car to be switched over to it and proceed westerly thereon. The grade at that point was about 3 feet in 100, descending towards the east. The motorman on the Schenectady car, after receiving the signal to start, started his car by letting off the brake, without applying any power. The front trucks of his car passed over the tongue properly, but, when the rear trucks reached it, it had evidently moved out of its position from the rail far enough for the flange of the wheel to enter, and so the rear truck went down on the cross-over, throwing the rear end of the car over on the other track, and the result was a collision between the car and the traction company's car, which was standing east of the cross-over on the east-bound track, and the plaintiff was thereby injured.

The plaintiff has secured a judgment against both defendants, and each of them appeals, separately.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Lewis E. Carr and James O. Carr, for appellant Schenectady Ry. Co.
Patrick C. Dugan, for appellant United Traction Co. ·
Richard O. Bassett, for respondent.

CHESTER, J. The plaintiff was injured while a passenger on one of the traction company's cars. While it is true that his injuries were received by reason of a collision between this car and one operated by the Schenectady Railway Company, yet the primary cause of the injury was the misplacement, or the failure to remain where it was placed, of the tongue of the switch maintained and operated by the traction company, and we think it is a fair inference from the testimony that such misplacement was caused by the concurring negligence of both defendants. Each of the defendants on the trial engaged in an effort to cast the blame for the plaintiff's injuries upon the other.

The case must be considered, having regard to the difference in the degree of care which the defendants were bound to exercise in relation to the plaintiff, under the law. He having been a passenger on one of the traction company's cars, that company was bound to the exercise of the utmost human skill and foresight with reference to maintaining, operating, and keeping in repair its tracks and switches, in order to save him from harm. Palmer v. D. & H. C. Co., 120 N. Y. 170, 24 N. E. 302, 17 Am. St. Rep. 629; Coddington v. Brooklyn Crosstown R. R. Co., 102 N. Y. 68, 5 N. E. 797; Zimmer v. Third Ave. R. R. Co., No. 1, 36 App. Div. 265, 55 N. Y. Supp. 308; Koehne v. N. Y. & Queens Co. R. Co., 32 App. Div. 419, 52 N. Y. Supp. 1088. And

the tongue of the switch having failed to remain in position or having been misplaced because of some unexplained or unascertained cause, it was not incumbent upon the plaintiff, as against the traction company, at least, to show the cause of its being misplaced; but, under the doctrine of res ipsa loquitur, that company was required to explain its cause in order to relieve itself from the presumption of negligence in causing the accident. Breen v. N. Y. C. & H. R. R. R. Co., 109 N. Y. 297, 16 N. E. 60, 4 Am. St. Rep. 450; Seybolt v. N. Y., L. E. & W. R. R. Co., 95 N. Y. 562, 47 Am. Rep. 75; Caldwell v. New Jersey Steamboat Co., 47 N. Y. 282; Holbrook v. Utica & Schenectady R. R. Co., 16 Barb. 113; Gilmore v. Brooklyn Heights R. R. Co., 6 App. Div. 117, 39 N. Y. Supp. 417.

The Schenectady Railway Company, on the other hand, was bound to the exercise of reasonable and ordinary care only under the circumstances which confronted it at the time. It bore the same relation to the plaintiff as if he had been driving his own horse and wagon upon the street, instead of being a passenger on one of the traction company's cars. Unger v. Forty-Second St., etc., R. R. Co., 51 N. Y. 497; Seagriff v. Brooklyn Heights R. R. Co., 31 App. Div. 595, 52 N. Y. Supp. 236.

Within these principles of law, it seems to me that there was sufficient evidence before the learned referee to justify his conclusions that each of the defendants was guilty of negligence, and that the negligence of each contributed to the plaintiff's injuries.

The negligence charged against the Schenectady Railway Company in the complaint was that its car ran at an excessive rate of speed, that it was a defective car, and that its employés upon the car were negligent. There was no proof that it was a defective car, but there was proof given on behalf of the plaintiff that would justify the inference of negligence on the part of the employés upon the car, growing out of the rate of speed at which the car was allowed to run at the time of the collision. The car had been switched over from the east-bound track to the west-bound track, and stopped at a point about 10 feet west of the westerly end of the permanent cross-over. The traction company's car was standing still on the east-bound track, close to the east end of the cross-over. Some one, presumably in the employ of the traction company, threw the tongue of the switch at the westerly end of the cross-over, and the Schenectady Company's car was started in its attempt to run down easterly upon the west-bound track. McGraw, its motorman, saw that the switch was set for that track. He saw the traction company's car standing at the other end of the switch, 75 or 80 feet away. He knew that he was running against the point of the tongue of the switch, and not against the heel, and in a way that it was not intended to be used. He knew that it had no rubber or block in the switch to hold the tongue in place. His car was a very heavy one—about twice the weight and about twice the length of the traction company's car. It had a double set of trucks, of four wheels each, one set at either end of the car, which was from 50 to 60 feet long. It was a heavy down grade. Under such circumstances, reasonable and ordinary care would require him to proceed very slowly, and to keep his car under control, so that the weight and the

speed of the car would not jar the tongue from its position or misplace the switch, or, if it did do that, so that his car might be stopped before injury had been done to a car standing so near upon the other track. Yet he swore that his car was moving about three or four miles an hour when he discovered the rear truck had taken the cross-over. This was evidently true, when the force of its contact with the traction company's car is considered. The rear end of his car hit the westerly end of the traction company's car, knocked it off the track, burst it in, and shoved it sideways from 15 to 20 feet from the position it occupied. The front end of his car went a distance of 40 or 50 feet east of the easterly end of the cross-over before it was stopped. While, under other circumstances, a rate of speed of three or four miles an hour could not fairly be regarded as evidence of carelessness; yet, with the situation presented here, and with all these facts before the referee, we cannot say that his conclusion that the Schenectady Railway Company was negligent is unsupported by the evidence.

On the trial the Schenectady Railway Company rested its case on its exception to a denial of its motion for a nonsuit at the close of the plaintiff's proof, and announced that no evidence would be introduced on its behalf. This position was adhered to, except that its counsel asked a few questions upon cross-examination of the witnesses produced on behalf of the other defendant, the answers to which did not materially change the situation, so far as the plaintiff's case against it was concerned. It insists that any testimony beneficial to the plaintiff's case brought out upon the examination of the traction company's witnesses cannot prevent it from having the full benefit of its exception to the denial of its motion for a nonsuit. It is not necessary to decide as to this contention, as the conclusion we have expressed as to the correctness of the decision of the referee as to the negligence of the Schenectady Railway Company is based entirely upon the plaintiff's proofs, without any reference to that produced by the traction company in its defense.

We also think that the judgment against the traction company is amply sustained by the evidence, under the rules of law applicable as against it. The negligence charged against it was that its tracks, switch, and the appliances connected therewith were improper, dangerous, insufficient, and defective. Notwithstanding the fact that the switch may have been misplaced by the jarring of the passage over it of the front trucks of the Schenectady Company's car, yet the accident was caused because the tongue of the switch did not stay where it was put by its own employés. It was bound, under the traffic agreement, to maintain and keep in repair the switch and the tracks. The only inference from the testimony is that the switch was operated by its own employés. It was bound to the highest degree of care in this respect. It was using its tracks and switch in a way they were not intended to be used, in order to facilitate the repairs to its tracks. In so using the switch, if the tongue would not remain in place without some mechanical means for holding it there, it was its duty to provide such means. When the plaintiff proved that the accident happened in the way it did, the presumption was that the traction company was negligent, and it was not incumbent upon the plaintiff to show the cause

for the switcn being misplaced. Yet, notwithstanding that it had employés in the vicinity of the accident, it did not call a single witness who saw the accident. We think, therefore, that the conclusion of the referee that both the defendants were negligent has sufficient support in the testimony.

The judgment, as against both defendants, should be affirmed, with costs. All concurred, except HOUGHTON, J., dissenting from affirmance of judgment against the defendant Schenectady Railway Company.

Judgment affirmed, with costs.