the company, by which it agreed to give him the benefit of the insurance, provided he paid the balance, then past due, within the time specified, and doubtless in the meantime, by virtue of this agreement, his life remained insured; but when he failed to keep the agreement, the company was at liberty to assert the original forfeiture, as it did.

[2] It is contended on the part of the respondent that the company is not in a position to claim a forfeiture on account of the nonpayment of the semiannual premium within the month of grace following the 27th day of February, 1907, when it became due, for the reason that, instead of pleading the giving of notice which justified it in declaring the forfeiture at that time, it pleaded the giving of a notice on the 30th day of April, 1907, with respect to the balance of the premium next to fall due under the extension in force at that time. On the trial, however, the plaintiff introduced in evidence a notice given by the company to the insured, dated January 17, 1907, purporting to be given pursuant to the requirements of the insurance law, that the premium of $67.20 would be due on the 27th day of February thereafter, and in other respects complied with the law relating thereto, and the defendant proved without objection or exception that this notice was duly mailed to the insured on the day it bears date. In these circumstances, it must be assumed that the action was not tried strictly in accordance with the pleadings, and the defendant is entitled to the benefit of the notice of January 17, 1907, as if it had been pleaded. As we view the case, the rights of the insured and of the plaintiff were clearly forfeited prior to the death of the insured, and the essential steps to obtain his reinstatement had not been taken.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

---

### SHEPPARD v. BROOKLYN HEIGHTS R. CO. et al.

(Supreme Court, Appellate Division, First Department. November 3, 1911.)

1. TRIAL (§ 165*)—REVIEW—DISMISSAL—EVIDENCE.

　　On motion to dismiss at the trial, plaintiff is entitled to the most favorable inferences that could reasonably be drawn from the evidence; and if there is evidence received which, if believed, would have justified a verdict in his favor, the motion should be denied.

　　[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 373, 374; Dec. Dig. § 165.*]

2. CARRIERS (§ 280*)—CARRIERS OF PASSENGERS—DUTY OF CARRIER.

　　A railroad is bound to exercise a very high degree of care for the safety of a passenger.

　　[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1085–1092, 1098–1106; Dec. Dig. § 280.*]

3. CARRIERS (§ 320*)—ACTION FOR INJURIES—QUESTION FOR JURY—PASSING OBJECTS.

　　On evidence in a passenger's action against a carrier for personal injuries resulting from the striking of the plaintiff by an awning, which was blown against and into the car as it passed, held, that the ques-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion of the carrier's negligence, in not seeing the danger and stopping in time to prevent injury, was for the jury.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 320.*]

4. NEGLIGENCE (§ 136*)—ACTION—QUESTION FOR JURY—PROPERTY NEAR RAIL-ROAD TRACK—LOOSE AWNING.

On the evidence in a passenger's action against a hotel company, whose awning near a car track had broken loose and was blown into a passing car, where it struck the plaintiff, *held*, that the question of the hotel company's negligence in permitting the awning to break loose was for the jury.

[Ed. Note.—For other cases, see Negligence, Dec. Dig. § 136.*]

Appeal from Trial Term, New York County.

Action by Mary Agnes Sheppard, an infant, by Mary Sheppard, her guardian ad litem, against the Brooklyn Heights Railroad Company and another. From a judgment dismissing the complaint after a trial at Trial Term, plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and LAUGHLIN, MILLER, SCOTT, and DOWLING, JJ.

Robert H. Roy, for appellant.
D. A. Marsh, for respondent Brooklyn Heights R. Co.
Otto H. Droege, for respondent Inlet Hotel & Cigar Co.

DOWLING, J. Plaintiff, aged 13 years, was a passenger on one of the trolley cars of the defendant's railroad, on August 26, 1909, being one of a party who had gone to Coney Island on an excursion organized by a charitable society. The party were on their return trip to New York, and were carried in six cars, in the sixth or last of which plaintiff was a passenger with her mother. At about 4:30 p. m. that car was on its way, following a route used for special excursion parties over the road, and which led through a private alley or road, owned or leased by the railroad, to Surf avenue, into which the car was to turn. Adjoining the alley to the left, or east, was the Prospect Hotel, operated by the other defendant. This hotel had its frontage on Surf avenue, but on the side next to the alley there was an arched opening in the wall of the building, which in winter was filled in with a window, but which at the time in question was open and covered only with a canvas awning. The opening was some 12 feet high and 9 feet wide. Its lower portion was occupied by a balustrade some 33 inches high, above which was an open space of about 18 inches, and above that being the awning, which completely covered the rest of the space above up to the top, where it was attached to a crosspiece of wood 2 by 3 inches. The covering was made of medium weight white army duck, hemmed, and to its lower end was attached a pole made of one-inch gas pipe, 9 feet 2 inches long, so that it laid flat and close to the building, covering the opening completely for the entire length and width of the awning. It was raised and lowered by ropes, and there is testimony that it was intended to be secured by at least two rope fastenings at the bottom, so that it could not fly out from the building if the fastenings were in place. There were eight

entrances to the hotel on Surf avenue, leading into a moving picture show there conducted as well, and there was another entrance into the same' show from the alley. The distance from the easterly track of defendant's railroad to the opening in the building operated by the other defendant was 46 inches, and the overhang of the car was 12 inches, leaving a clear way of 34 inches. As the car in which plaintiff was a passenger reached a point opposite the opening in question, the awning was blown against and partly into the car, the pole or pipe striking the plaintiff, pinning her to her seat, and inflicting injuries, before the car was stopped and the pressure of the pole released, for which she now seeks damages.

On plaintiff's behalf there was evidence which, if credited by the jury, would have established the following facts: (1) That the pole of the awning was dragged along the runway of the car, at an angle of 45 degrees, the elevated end being the one nearer Surf avenue, and that the canvas was flapping and striking the car, first hitting it between the second and third front seats. Plaintiff, it is not disputed, was in the third seat from the rear, on the extreme left side of the car—that is, nearest to the hotel—and the side rails of the car were both down, so no one could enter or leave. (2) The sound of the canvas was heard some minutes before it struck plaintiff. (3) The pole first hit the stanchion directly back of the motorman, and then hit every stanchion in succession until it finally entered the car and struck the plaintiff. (4) The pole struck each of the stanchions, and swept along the side of the car, which latter swung nearer the awning as it started to turn into Surf avenue. (5) It had started to rain, and the wind was blowing at the time. These facts were testified to by witnesses who were either on the sidewalk or in the sixth car. In addition, two witnesses were produced, passengers on the fifth (or next preceding) car, which was about 100 feet in advance of the sixth car, and who testified that as the fifth car passed the opening in question the awning was flapping freely, and one of them swears that it was blown out by the wind, and hit every stanchion of the fifth car as it passed. The learned trial court, at the close of plaintiff's case, denied the motion to dismiss the complaint as to the railroad, and reserved decision on a similar motion as to the other defendant.

For the defendants, testimony was offered on behalf of the hotel company as to the method of construction of the awning, that it was securely fastened on the day of the occurrence in question, that there was no wind blowing on that day, and that the awning had become unfastened by the acts of from one to three boys on the car in question, who, sitting or hanging over the rail, pulled on the retaining rope and unfastened it, though it is difficult to conceive how this could happen when the retaining rope was wound two or three times around the balustrade and the pole was hooked to the floor, according to Kalman Goldberg's testimony. The defendant railroad called witnesses to prove that no accident had ever happened at this point before. The conductor of the fifth car denied that the awning ever struck that car. The motorman of the sixth car testified that he saw the fifth car, and that it did not come in contact with the awning,

that the awning was the usual distance from the car when it passed, and that he stopped his car as soon as he got the signal. The conductor of the sixth car testified that the awning first struck the seat before that in which plaintiff was sitting, that only one end thereof came out, and that no boys were sitting on the guard rail.

[1, 2] At the close of the entire testimony, the complaint was dismissed as to both the defendants. We think this was error. Plaintiff was entitled, upon the decision of such a motion, to the most favorable inferences that could reasonably be drawn from the testimony; and if there was evidence received, which, if believed, would have justified the finding of a verdict in her favor, the motion to dismiss should have been denied. Here plaintiff was a passenger on the defendant railroad, which was bound to exercise a very high degree of care for her safety and security. Loudoun v. Eighth Ave. R. Co., 162 N. Y. 380, 56 N. E. 988; Klinger v. United Traction Co. et al., 92 App. Div. 100, 87 N. Y. Supp. 864, affirmed 181 N. Y. 521, 73 N. E. 1125; Keegan v. Third Ave. R. R. Co., 34 App. Div. 297, 54 N. Y. Supp. 391, affirmed 165 N. Y. 622, 59 N. E. 1124.

[3] Plaintiff did not rely alone upon a presumption of negligence arising from the fact of the happening of the accident, as the learned trial court seemed to believe, but had introduced evidence tending to affirmatively establish negligence. There was testimony received which, if believed by the jury, would have justified it in finding either (1) that the preceding car had been struck repeatedly by the awning, which was then free and flapping in the wind, so that every one of the stanchions came in contact therewith, and which condition created a duty upon the motorman of the fifth car to either stop and have the danger obviated, or to notify the motorman of the next car of the risk of passing while the condition existed, for it was apparent that a heavy canvas, with an iron pipe at its extremity violently flying around in the air in the fixed pathway of the cars, was highly probable to cause damage or injury to the passengers, particularly as the clearway was only 34 inches and the pole was 110 inches long, swinging freely at one end; or (2) that the motorman of the sixth car had seen the conditions just recited, and should also have appreciated the danger and stopped in time, and not passed until the awning was secured, for he admitted he had a full view of the fifth car when he undertook to deny that the awning had struck it at all; or (3) that the awning was loose at one end and swinging freely in the air, and struck the sixth car at the stanchion directly behind the motorman, thus giving him immediate notice of the danger and calling for the immediate stoppage of the car by him.

[4] As to the other defendant, if the method of construction of this awning was safe and proper, as its witnesses testify without contradiction, then it could be held liable only if the jury found that it negligently allowed the awning to remain unfastened. Concededly, the pipe was not heavy enough to alone keep the awning down and close to the wall. That required the tying of the rope fastenings in two places, at least. Had the ropes been properly fastened, the awning could not have blown up or away from the building. It was the duty of the

hotel company to keep them so fastened, for the danger was obvious of allowing such a heavy object to be carried by the wind across a track on which cars ran at irregular intervals. The awning was in the path of currents of air from some of nine doors, at least, near the ocean, and with people constantly moving to and fro. The duty of that particular defendant to keep the awning properly fastened was clear. Was that duty performed? That must have been a question for the jury in the first instance, particularly in view of the untenable theory offered as to how the awning became loose, which may well create a doubt as to whether it was ever fastened; for the testimony that it was fastened came from those who also undertook to explain its casting loose.

Upon the whole case, therefore, issues of fact were presented which required submission to the jury.

The judgment appealed from must be reversed, and a new trial ordered as against both defendants, with costs to appellant to abide the event. All concur.

INGRAHAM, P. J.   I concur with Mr. Justice DOWLING that the proof required the submission of the question of the defendants' negligence to the jury. The defendant railroad company was a common carrier, and the plaintiff was a passenger. The maxim "res ipsa loquitur" applied, and this, in connection with the evidence, would justify the jury in finding that the defendant railroad company was negligent. As to the hotel company, no such relation existed between it and the plaintiff. It maintained, however, a structure abutting upon a way or road that was used as a public street. The public had a right to the use of that street; and the hotel company was bound to see to it that neither its structure, nor the use to which any part of it should be put, would injure a person lawfully upon the street. It could not maintain for its own purposes a curtain, with a pipe of this character to hold it down, without its being so securely fastened that it could not blow out upon the street and injure a person lawfully there, without responsibility for an injury caused thereby.

The evidence is undisputed that the plaintiff was riding in a street car that passed the hotel premises, and while there an appliance upon the defendant's premises for some cause blew out, and a pipe attached to that appliance struck the plaintiff and injured her. Whether or not such an accident was an unavoidable one, or that it could be prevented by the exercise of proper care by the hotel company, was a question for the jury, and I therefore concur in the reversal of the judgment as against both defendants.

SCOTT, J., concurs.