ALICE C. O'BRIEN, Respondent, *v.* NEW YORK RAILWAYS COMPANY, Appellant.

First Department, January 24, 1919.

Railroads — negligence — injury to passenger on street car caused by shaft of truck which penetrated car — erroneous charge — degree of care required of motorman confronted with sudden danger.

Where, when the defendant's street car in the city of New York, moving northward, was approaching a cross street, the driver of a truck traversing the cross street drove upon the track when the car was not more than a car length distant, with the result that one of the shafts of the truck entered the side of the car and injured the plaintiff, a passenger, it was error for the court to charge in substance that it was the duty of the defendant to carry its passengers safely " so far as human care and foresight will go " and that this required the exercise of " the utmost care and diligence of very cautious persons."

A carrier does not insure the safe transportation of its passengers. The common-law rule of liability, as applied in this jurisdiction, holds the carrier liable only for injuries which it could have prevented.

Where the negligence of a common carrier of passengers is predicated on the negligence of its motorman driving a street car the rule of ordinary care should be applied throughout in determining the care required to be exercised, not by the management of the company, but by the motorman operating the car, whether in the particular circumstance he was confronted with a sudden emergency or not.

APPEAL by the defendant, New York Railways Company, from a judgment of the Supreme Court in favor of the plaintiff,

entered in the office of the clerk of the county of New York on the 15th. day of March, 1918, upon the verdict of a jury for $3,500, and also from an order entered in said clerk's office on the 14th day of March, 1918, denying defendant's motion for a new trial made upon the minutes.

*A. H. Cole* of counsel [*James L. Quackenbush,* attorney], for the appellant.

*Frederick N. Van Zandt,* for the respondent.

LAUGHLIN, J.:

This is an action by a passenger against a carrier to recover for personal injuries sustained on the 21st day of August, 1915, shortly after noon while the car was crossing Twenty-fifth street on the north-bound track in Sixth avenue, New York city. I am of opinion that the judgment and order should be reversed on two grounds which I will consider separately.

*First.* The testimony on the part of the plaintiff tends to show that as the defendant's car, on which the plaintiff was a passenger, approached Twenty-fifth street from the south, a horse attached to a truck was going easterly on Twenty-fifth street across Sixth avenue at a walk or jog trot; that the horse, without slowing up or giving any indication that the driver intended to stop, reached the track on which the car was moving ahead of the car and when it must have been nearly or more than a car length away; that the head of the horse was across the westerly rail before the car reached that point, and that thereupon the driver, observing that the car was coming on instead of stopping to take on passengers who were waiting to board it immediately to the south of the crossing, pulled on the reins lifting and swinging the head of the horse back and southerly away from the car as the front of the car passed, and that when the horse settled down one of the shafts of the truck entered the side of the car and injured the plaintiff, who was seated on the westerly end of the fourth seat from the front. On the part of the defendant the evidence tends to show that the car was proceeding at the ordinary rate of speed over the crossing, viz., about five miles per hour, and that the horse was approaching

from the west on a walk and instead of stopping, as the motorman had a right to expect it would, continued on until the shaft struck the plaintiff.

It thus appears that if the testimony offered by the plaintiff was accepted as credible, a position of grave danger of collision was presented to the motorman as he approached or reached the crossing; and if the testimony offered by the defendant was accepted, there was not presented to the motorman a position from which such danger should have been apprehended. According to some of the decisions in this jurisdiction, in the one case, viz., if the motorman was confronted with a situation of grave danger of injury to passengers, it was his duty to exercise the utmost or highest degree of care and foresight of which the human mind is capable, to avoid a collision (*Maverick* v. *Eighth Ave. R. R. Co.*, 36 N. Y. 378; *Keegan* v. *Third Ave. R. R. Co.*, 34 App. Div. 297; affd., by a divided court, 165 N. Y. 622; *Stierle* v. *Union R. Co.*, 156 id. 70, 684; *Koehne* v. *N. Y. & Queens County R. Co.*, 32 App. Div. 419; affd., 165 N. Y. 603; *Zimmer* v. *Third Ave. R. R. Co., No. 1*, 36 App. Div. 269; *Schneider* v. *Second Ave. R. R. Co.*, 59 Super. Ct. 536, 541; *Loudoun* v. *Eighth Ave. R. R. Co.*, 162 N. Y. 380, 387; *Sheppard* v. *Brooklyn Heights R. R. Co.*, 146 App. Div. 806, 809); but according to many authorities, when not confronted with grave danger, the duty of *ordinary* care only devolves upon the motorman in operating the car, which, of course, may require a very high degree of care. (*Regensburg* v. *Nassau Elec. R. R. Co.*, 58 App. Div. 566; *Conway* v. *Brooklyn Heights R. R. Co.*, 82 id. 516; *Kelly* v. *Metropolitan Street R. Co.*, 89 id. 159; *Merrill* v. *Metropolitan Street R. Co.*, 73 id. 401; *Endres* v. *International R. Co.*, 129 id. 785; *Walsh* v. *Yonkers R. R. Co.*, 114 id. 797. See, also, *Ganguzza* v. *Anchor Line*, 97 App. Div. 352; affd., 184 N. Y. 545; *Palmer* v. *D. & H. C. Co.*, 120 id. 170; *Beltz* v. *Buffalo, R. & P. R. Co.*, 222 id. 433; *Dittmar* v. *International R. Co.*, 173 App. Div. 995; *Miller* v. *Ocean S. S. Co.*, 118 N. Y. 199, 211; *Kelly* v. *Manhattan R. Co.*, 112 id. 453; *Murphy* v. *Hudson & Manhattan R. R. Co.*, 180 App. Div. 585, and *Ayers* v. *Rochester R. Co.*, 156 N. Y. 104.) The *only* negligence with which the defendant was charged was *the negligence of the motorman in operating the car*. The court, without differentiating between

the degree of care required of the motorman in the face of grave danger and that required ordinarily when no danger is imminent, charged the rule of liability in general terms that it was the duty of the defendant to carry safely those whom it undertook to carry " so far as human care and foresight will go," and that this required the exercise of " ' the utmost care and diligence of very cautious persons,' " and stated the question for the jury to determine as follows: " Was the defendant negligent in exercising the highest care that was consistent with its duty as a carrier of passengers? " and further charged that even though the driver of the truck were guilty of negligence contributing to the accident, if the defendant failed to exercise the degree of care required of it as stated in the instructions given, it must be held responsible for the accident. Under these general instructions that it was the duty of the defendant to exercise the utmost or highest degree of care and foresight of which the human mind and body were capable, which in the circumstances related only to the care to be exercised by the *motorman,* for aught that appears the jury may have found the facts in accordance with the evidence and theory of the defendant and yet have deemed it their duty to hold it liable. I am of the opinion, therefore, that the instructions were erroneous and that the exceptions thereto necessitate a new trial.

*Second.* I am also of the opinion that the rule prescribed by some of the decisions by which the carrier is held liable for the failure of the motorman to exercise the utmost or highest degree of human care and foresight when confronted with grave danger, is one most difficult of application by a jury and perplexing alike to bench and bar. (See *Thoreson* v. *New York State Railways,* 98 Misc. Rep. 37.) Ordinarily it is recognized that an individual may not be able to do the most prudent thing when confronted with danger and one who is called upon to act in an emergency for which he is not responsible is not always required to exercise even ordinary care (*Getman* v. *D., L. & W. R. R. Co.,* 162 N. Y. 21; *Lewis* v. *Long Island R. R. Co.,* Id. 52; *Koster* v. *Coney Island & Brooklyn R. R. Co.,* 165 App. Div. 224; *Van Ingen* v. *Jewish Hospital,* 182 id. 10; *Quill* v. *New York Central & H. R. R. R. Co.,* 16 Daly, 313; affd., 126 N. Y. 629); but that rule, of course, does

not apply to an employee performing a duty of his employer to passengers. It appears from the reported cases that ordinarily when this rule is applied the jury are so instructed generally as in the case at bar. Governed by such instructions jurors may think that the motorman should wait until a crossing is clear and there is *no* danger of a collision; but such a rule of liability would preclude the carrier in large cities and congested centers from performing the functions for which it received a charter and franchises, viz., transporting passengers with reasonable despatch. The carrier does not insure the safe transportation of its passengers. The common-law rule of liability as applied in this jurisdiction *holds the carrier liable only for injuries which it could have prevented.* The extreme rule of liability to passengers for injuries which might have been prevented is readily understood even by laymen when confined to the performance of duties which from their nature afford time and opportunity for the exercise of the utmost or highest degree of care possible, such as for example the construction, inspection and maintenance of the roadbed and track and the purchase, inspection and repair of equipment, prescribing rules and regulations for the operation and management of the cars with respect to speed and otherwise. If with such duties fully performed and efficient motormen, who are able to understand their duties and the rules and to perform the one and follow the other, selected, the carrier be held liable for the exercise of that care by the motorman in any situation that may arise that would be exercised by the average individual of ordinary prudence under like circumstances in the light of his instructions, his duties, and the obligations owing by his employer to the passengers, that, I think, will satisfy the requirements of the law, and still relieve the carrier from a liability imposed by the utmost and highest degree of care rule which, when applied to a motorman in the operation of a car, imposes a liability against which it is impossible for a carrier to guard, and by which it becomes an insurer that the motorman will, in any emergency involving *grave danger to passengers*, do what is virtually impossible, viz., always remain calm and cool and exercise the utmost and highest degree of care for the safety of the passengers. The carrier would thereby

become an insurer with respect to the actions of a motorman in an emergency, but that, I think, was never intended, for it must employ motormen, and can neither perform such duties through its executive officers nor is it practical for it directly to supervise the performance thereof. The carrier can by the exercise of the high degree of care it owes to passengers see to it that the motormen employed possess the necessary intelligence and judgment, but I know of no test by which they can insure the employment only of those who will exercise the utmost and highest degree of care when confronted with a situation involving danger to passengers.

The performance of the duty of ordinary care often requires the exercise of a very high degree of care when that is necessary to be commensurate with danger apparent or to be apprehended and guarded against; and ordinarily it should be left to the jury to determine what degree of care will constitute ordinary care in a given situation. It thus appears to me that by the change I am suggesting the administration of the law in such cases will be simplified and rendered certain and more easily understood and that it will lessen the necessity of ordering new trials. The matter is not regulated by statute but by judicial decisions only. We have the same authority for declaring and applying this rule of ordinary care in all such cases that was possessed by the court when the *two* rules prescribing the liability of a carrier for the conduct of the motorman were promulgated, viz., the one of ordinary care governing when danger is not apparent or to be apprehended and that requiring the utmost and highest degree of care in the presence of grave danger. I am of opinion, therefore, that the rule of ordinary care as herein suggested should be applied throughout in determining *the care required to be exercised,* not by the responsible management of the company, for the safety of passengers, but by motormen in the operation of cars. Such a rule would be readily understood by the bench and bar and could be applied without the slightest difficulty by jurors and without the danger of misapprehension and of erroneous application incident to the application of the rule of extreme and highest degree of care in such cases. If this point should arise in the Court of Appeals and that court should be convinced that the existing

rule is wrong or incapable of intelligent administration, it would not hesitate to prescribe the necessary change. (See *People ex rel. Schau* v. *McWilliams,* 185 N. Y. 92, overruling *People ex rel. Sims* v. *Collier,* 175 id. 196; *Fitzwater* v. *Warren,* 206 id. 355, overruling *Knisley* v. *Pratt,* 148 id. 372.)

This court is in close touch with the trial courts and its members are free to, and at times some of them do, hold Trial Terms in other departments and the decisions of the Appellate Division on this class of questions are ordinarily final; and, therefore, since the point might not be presented to the Court of Appeals for a long time, I deem it quite proper that we should prescribe the change I have suggested, from which there will be evolved, I believe, a practical rule for the intelligent administration of the law on this subject, just as resulted from the change from the *sui juris* rule which was brought about by decisions of this court in the first instance and is now generally accepted and applied and has resulted in eliminating in nearly all cases of that class assignments of error that were quite common theretofore.

I am of opinion, therefore, that the judgment and order should be reversed on both grounds and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., and MERRELL, J., concurred.

CLARKE, P. J. (concurring):

For many years I have been of the opinion that to grade negligence and care into degrees was unscientific, difficult in application and troublesome in the actual conduct of litigation. Negligence is the failure to exercise the care which the circumstances of the particular case require.

I, therefore, agree in the reasoning of the opinion of Mr. Justice PAGE. But this is an intermediate court. I feel that we have no right to disregard the many cases in the Court of Appeals which have discussed degrees of care and attempt to establish a rule of universal application not in harmony therewith, especially when a concrete case is before us for decision which does not involve such important matters as roadbed, equipment, signals, rules, etc.

We are all of the opinion that this judgment should be

reversed.   I prefer to put the reversal upon the ground stated by Mr. Justice Laughlin in which it seems to me a clear and workable rule has been laid down, applicable to this and other like cases, of operation by the motorman.   I, therefore, concur in his opinion.

Page, J.:

The action is to recover damages for personal injuries sustained by the plaintiff, a passenger, by reason of the alleged negligence of the motorman in operating a car of the defendant, a common carrier.   The undisputed facts are that the plaintiff boarded an open car going north operated by the defendant on Sixth avenue, in New York city, seated herself at the westerly end of the fourth seat from the front and paid her fare.   When the car was crossing Twenty-fifth street a truck, drawn by one horse, collided with the car, the left-hand shaft striking the plaintiff's leg, causing serious injury.   The conflict in the evidence related to the movement of the truck.   The plaintiff's witnesses testified that the driver of the truck, coming from the west on Twenty-fifth street, saw the car approaching the south crossing, and seeing a number of persons standing there, apparently with the intention of boarding the car, thinking that the car would stop, proceeded across the avenue, but the car did not slacken its speed, and after the horse's head was over the westerly rail, in an attempt to avoid a collision, the driver jerked on the reins, causing the horse to rear, and swung the horse around to the south, nearly parallel with the car, and as he came down the left-hand shaft struck the plaintiff's leg.

The defendant's witness testified that the horse had not started across the avenue when the car reached Twenty-fifth street; that it did not stop but proceeded on a trot and ran into the side of the car.   The court charged the jury: " In this case the rule of negligence differs from the class of cases to which I have referred.   The rule laid down by our highest court applicable to the defendant * * *, is as follows, and I read to you * * * an excerpt from the opinion of the Court of Appeals: ' Passenger carriers bind themselves to carry safely those whom they take into their coaches, so far as human care

and foresight will go. That is the utmost care and diligence
of very cautious persons.' "* The court, later in its charge,
stated: " But the degree of care resting upon a common
carrier of passengers, relating to his passenger, is the
exercise of the highest and utmost care, so far as human
care and foresight will go. That is the utmost care and
diligence of very cautious persons." The court refused to
charge the request of the defendant: " The defendant was not
held to the highest skill and care that human foresight can
attain with respect to the plaintiff in this action under the
circumstances. Only ordinary care in view of the dangers
to be apprehended was required of the defendant or its motor-
man in the operation of this car." There are, therefore, pre-
sented two conflicting rules, both of which have apparent
support in the opinions of appellate courts. The rule that
the carrier is bound to use " ' the utmost care and diligence
of very cautious persons,' " finds support in many cases of
our highest court. (*Bowen* v. *N. Y. C. R. R. Co.*, 18 N. Y.
408, 410; *Brown* v. *N. Y. C. R. R. Co.*, 34 id. 404; *Maverick* v.
*Eighth Ave. R. R. Co.*, 36 id. 378, 381; *Barrett* v. *Third Ave.
R. R. Co.*, 45 id. 628, 634; *Taber* v. *D., L. & W. R. R. Co.*,
71 id. 489, 494; *Coddington* v. *Brooklyn Crosstown R. R. Co.*,
102 id. 66, 68; *Stierle* v. *Union R. Co.*, 156 id. 70, 684; *Keegan*
v. *Third Ave. R. R. Co.*, 34 App. Div. 297; affd., 165 N. Y.
622; *Koehne* v. *N. Y. & Queens County R. Co.*, 32 App. Div.
419; affd., 165 N. Y. 603; *Loudoun* v. *Eighth Ave. R. R. Co.*, 162
id. 380, 386, 387.) There are other cases that would seem to
limit the application of this rule to the care that must be
exercised by the carrier in the construction and maintenance
of its roadway and appurtenances, and in the purchase and
maintenance of cars and engines or machinery directly used
as a means of transportation. But having done this, he
is held to degrees of care variously stated as very high, high
and ordinary. (*Regensburg* v. *Nassau Elec. R. R. Co.*, 58 App.
Div. 566; *Conway* v. *Brooklyn Heights R. R. Co.*, 82 id.
516; *Kelly* v. *Metropolitan Street R. Co.*, 89 id. 159;
*Merrill* v. *Metropolitan Street R. Co.*, 73 id. 401; *Suse*
v. *Metropolitan Street R. Co.*, 80 id. 24; *Endres* v. *Inter-*

---

* See *Bowen* v. *N. Y. C. R. R. Co.* (18 N. Y. 410).— REP.

*national R. Co.*, 129 id. 785; *Ganguzza* v. *Anchor Line*, 97 id. 352; affd., 184 N. Y. 545; *Dittmar* v. *International R. Co.*, 173 App. Div. 995; *Miller* v. *Ocean S. S. Co.*, 118 N. Y. 211; *Beltz* v. *Buffalo, R. & P. R. Co.*, 222 id. 433, 436.) While these cases, carefully read with the principle of the common law in mind, will not bear that construction, nevertheless, these decisions have been construed by some of the bench and bar as establishing degrees of negligence, as a matter of law, and have led to attempts to classify the injuries that occur, with reference to the particular happening, thus requiring the trial judge. to decide the class into which the particular occurrence falls, and then to charge the jury that under these circumstances the carrier is held to the utmost degree of care, the highest degree of care, a high degree of care, or only to ordinary care. (*Thoreson* v. *New York State Railways*, 98 Misc. Rep. 37.) Such a rule is difficult of application and tends to lead to confusion and perplexity, not only in the minds of the jury but also in its proper comprehension and expression by the court. In our common law, what is or is not actionable negligence is more a question of fact than of law, there is but one degree, and that is that degree of care that a reasonably prudent man should exercise under the circumstances of the case. It is clear, and readily understood by the jury, that under the circumstances some situation would call for the exercise of more care than would be demanded by other situations. As was stated many years ago with regard to the antitheses of these degrees of care: " The theory that there are three degrees of negligence, described by the terms slight, ordinary, and gross, has been introduced into the common law from some of the commentators on the Roman law. It may be doubted if these terms can be usefully applied in practice. Their meaning is not fixed, or capable of being so. One degree, thus described, not only may be confounded with another, but it is quite impracticable exactly to distinguish them. Their signification necessarily varies according to circumstances, to whose influence the courts have been forced to yield, until there are so many real exceptions that the rules themselves can scarcely be said to have a general operation. * * * Recently the judges of several courts have expressed their

disapprobation of these attempts to fix the degrees of diligence by legal definitions, and have complained of the impracticability of applying them. * * * It may be added that some of the ablest commentators on the Roman law and on the Civil Code of France, have wholly repudiated this theory of three degrees of diligence, as unfounded in principles of natural justice, useless in practice, and presenting inextricable embarrassments and difficulty." (*Steamboat New World* v. *King,* 57 U. S. [16 How.] 469, 474:) To demonstrate the soundness of this criticism we need only consider the rule contended for, that, with relation to the roadbed, cars, engines and machinery employed in transportation of passengers, the carrier is required, as a matter of law, to exercise the highest degree of skill and care that human foresight and prudence can suggest, short of guaranteeing the safety of the passenger. *First.* This must be qualified by a consideration of the requirements of the business of the carrier, for it would lead to an absurdity to hold that a railroad, running infrequent trains through a sparsely settled country, would be required to adopt all the elaborate safety devices, and constant inspection and supervision, that would be necessary on a great trunk railroad, carrying thousands of passengers daily. The necessity of the employment of such safeguards by the first would render impossible the operation of the road; while in the case of the latter a failure to employ them might of itself be negligence. *Second.* The rule must be further qualified by the reasonable apprehension of danger to the passenger. Thus the same degree of care and watchfulness are not alike requisite as to all the various portions of the machinery and appliances. The question as to what is the requirement of duty in regard to frequency of examination is dependent upon the liability to impairment and consequences which may be apprehended as the result of the defective condition. (*Palmer* v. *D. & H. C. Co.,* 120 N. Y. 170.) Furthermore, the question may very properly arise, whether the injury to the passenger was the reasonable, natural and probable result of a situation which ought to have been foreseen by the company, and guarded against. (*Ayers* v. *Rochester R. Co.,* 156 N. Y. 104, 108.) Also, there is no reason in law for applying one degree of care to the means of

transportation, and a less degree to the operation of those means. The carrier does not merely agree to use in transportation of the passenger a safe roadbed, safe cars and engines, but he does agree to safely transport a passenger to his destination. We might multiply facts and circumstances which would tend to qualify the rule above stated, but sufficient has been stated, in my opinion, to show that as a statement of law it is inexact and incapable of general application. The common-law rule above stated affords a full and adequate rule to be applied in every case. Of course the trial judge must properly instruct the jury as to the circumstances to be taken into consideration. The first of these is the agreement that is implied from the relation and the duty incumbent on the carrier by reason thereof. The carrier agrees to receive the passenger, convey him to his destination, and set him down safely. Although the carrier does not insure his safety from all injuries, it does assure him against any injury which might be sustained through its active or passive neglect. As the passenger's life and safety are intrusted in a great degree to the care of the carrier who transports him, the law deems it reasonable that the carrier should be bound to exercise as high a degree of care, skill and diligence, in receiving, transporting and setting him down safely as the means of conveyance employed and the circumstances of the case will permit; from this it follows that assuming such a duty the obligation rests upon the carrier to exercise the utmost care and diligence in providing against those injuries which human care and foresight can guard against. This rule has been repeatedly declared by our highest court. (Cases cited, *supra.*) It has been declared by the courts of England, by the United States Supreme Court and by all the State courts. It applies not only to carriers who use steam railroads but to those who use electric railroads, horse railroads, stage coaches, steamboats and sailing vessels. It applies at all times when, and in places where, the parties are in relation to each other of passenger and carrier, and it includes attention to all matters which pertain to the business of carrying passengers. (*Dodge* v. *Boston & Bangor Steamship Co.*, 148 Mass. 207, 217; *Brown* v. *N. Y. C. R. R. Co.*, 32 N. Y. 597, 602.) The phrase " utmost

care and diligence " does not mean that the carrier is thereby made an insurer of the passenger's safety, but is required to take every precaution that human foresight can suggest to prevent the happening of an event that is fraught with danger to the passenger. In the operation of the means of transportation by employees, the requirement is that they shall act with that care that a reasonably prudent man would, in the particular situation, upon whom rested the obligation to safely transport those committed to his care. It is not necessary to instruct the jury as to the quality or degree of care that attaches to the facts of each case. They will realize that more care and vigilance will be demanded with reference to the roadbed and the equipment than to station platforms and approaches, because of the greater possibility of injury. The common-law rule is adapted to all the conditions of fact that can be presented and leaves the question of whether the act or omission of the carrier was negligent, which is more a question of fact than of law, to the determination of the triers of fact.

It is not inappropriate, in an opinion of an appellate court, to say, taking into consideration the facts as found by the jury, that under the circumstances the carrier was required to exercise the highest or a high degree of care, or only ordinary care. Such expressions should not be given the effect, however, of attempting to establish any other or different degree of care than that expressed in the common-law rule, and the reading of excerpts from judicial opinions in other cases is calculated to mislead rather than help the jury. " Judicial opinions are written to guide judges, not juries, and the judge who presides at the trial is expected to deduce the rules of law applicable to the case from all that has been recorded for his instruction, and to deliver them to the jury relieved, as much as possible, from the verbiage in which they are found clothed. * * * There is no standard but the discretion of the judge himself to determine how much help he shall render a jury in weighing facts, and applying the law to them. Perhaps the least amount of aid is rendered where the law is delivered in the form of copious extracts from judicial opinions in other cases, but nevertheless, we can not say the Court erred in matter of law, when they

answered legal propositions in the very terms in which similar propositions had been answered in this Court." (*Hood* v. *Hood*, 25 Penn. St. 417, 422.)

In the case under consideration the jury were required to determine, as a matter of fact, whether the truck had proceeded so far that a collision could have been seen to have been, if not inevitable, at least proximately sure to have resulted unless the motorman stopped the car, in accordance with the testimony of the plaintiff's witness; or, on the other hand, whether the situation was such that the car had proceeded so far across the intersecting street that no danger from a collision could be reasonably apprehended, as disclosed by the defendant's witness. Instead of presenting those two situations to the jury, so that they could apply to each the test, did the motorman use the care that a reasonably prudent man would have done under those circumstances, when he was under an obligation to carry the passengers in safety, the court charged in general language an excerpt from a Court of Appeals opinion: "Passenger carriers bind themselves to carry safely those whom they take into their coaches, so far as human care and foresight will go. That is the utmost care and diligence of very cautious persons." With such a charge, unqualified and unexplained, the jury may have found the facts as disclosed by defendant's witnesses and felt themselves constrained to find the defendant chargeable with negligence, for they very reasonably might have considered that "a very cautious person" in the exercise of "the utmost care and diligence" would have stopped and allowed a team to pass over, though there was no condition to suggest imminent danger. The instruction was, therefore, erroneous, and the exception thereto necessitates a new trial.

The judgment and order will, therefore, be reversed and a new trial granted, with costs to appellant to abide the event.

DOWLING, J., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.